[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 440.]

THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* LOVEJOY,

APPELLEE AND CROSS-APPELLANT.

[Cite as *State v. Lovejoy*, 1997-Ohio-371.]

*Criminal law—Indictments—Several counts of multi-count indictment are not interdependent—Inconsistency in verdict arises, when—Applicability of double jeopardy and collateral estoppel.*

1.  The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.  (*Browning v. State* [1929], 120 Ohio St. 62, 165 N.E. 566;  *State v. Adams* [1978], 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137, paragraph two of the syllabus, vacated on other grounds [1978], 439 U.S. 811, 99 S.Ct. 69, 58 L.Ed.2d 103;  *State v. Brown* [1984], 12 Ohio St.3d 147, 12 OBR 186, 465 N.E.2d 889;  and *State v. Hicks* [1989], 43 Ohio St.3d 72, 538 N.E.2d 1030, approved and followed.)

2.  When a jury finds a defendant not guilty as to some counts and is hung on other counts, double jeopardy and collateral estoppel do not apply where the inconsistency in the responses arises out of inconsistent responses to different counts, not out of inconsistent responses to the same count.

(No. 96-686—Submitted April 16, 1997—Decided September 24 , 1997.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 95APA07-849.

———————————

{¶ 1} On August 16, 1993, Christa L. Curry and her husband, Nathan Curry, were at their apartment, which they shared with Nathan's brother, Neil Curry. Christa and Nathan were planning to go to a softball game.  Christa was upstairs

getting ready, and Nathan was downstairs with their twin daughters. Christa heard someone kicking on the back door. Nathan yelled upstairs and asked Christa if she was making the noise. She told him that she was not. She heard Nathan say, "Hold up a minute," or "Wait a minute," and then she heard two gunshots.

{¶ 2} As Christa came downstairs, she saw her husband fall to the floor. An armed man approached her and stuck a gun in the side of her face and then in the back of her head and forced her to lie down on the floor. The first armed man told a second man to enter the apartment. As the second man proceeded upstairs to the front bedroom, he tripped over Christa as she lay on the floor. Christa heard a loud noise from upstairs. Shortly thereafter, the second man came downstairs, and both men left the apartment and fled in a car.

{¶ 3} Both Nathan Curry (the victim) and Neil Curry were marijuana dealers. At the time of the murder, the victim, Nathan Curry, had seven pounds of marijuana in the apartment, while his brother, Neil, had four pounds of marijuana in the apartment.

{¶ 4} Within twenty minutes of the first police dispatch, the police apprehended the defendant-appellee and cross-appellant, Mark E. Lovejoy, and Darrell Stepherson in the vicinity. Their car had been abandoned, and several neighbors had reported seeing two young black men jumping fences and hiding in the bushes around houses in the neighborhood. One neighbor saw the men discard two guns under a bush. The guns were retrieved, and tests showed that one of those guns was the murder weapon. When arrested, the appellee had in his possession a black bag containing marijuana, which was later identified by Neil Curry as his four pounds of marijuana that had been taken from Nathan Curry's residence.

{¶ 5} A Franklin County Grand Jury indicted appellee on five counts relating to the August 16, 1993 murder of Nathan Curry. The indictment included charges of aggravated murder with prior calculation and design in violation of R.C. 2903.01(A), aggravated murder committed during the course of a felony, *i.e.*, an

2

aggravated robbery in violation of R.C. 2903.01(B), aggravated robbery in violation of R.C. 2911.01, kidnapping in violation of R.C. 2905.01, and having a weapon under a disability in violation of R.C. 2923.13(A)(2). The aggravated murder with prior calculation and design and felony murder charges each included two death penalty specifications. The first was that the appellee committed the offense of aggravated murder for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the appellee, namely aggravated robbery, in violation of R.C. 2929.04(A)(3). The second specification was that the offense was committed while the appellee was fleeing immediately after committing aggravated robbery and the appellee was either the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design, in violation of R.C. 2929.04(A)(7). Further, the charge of having a weapon while under a disability contained a specification in accordance with R.C. 2941.143, alleging that the appellee made an actual threat of physical harm to Christa Curry with a deadly weapon. In addition, all charges contained a firearm specification in accordance with R.C. 2941.141.

{¶ 6} On November 19, 1994, the first jury acquitted the appellee of aggravated murder with prior calculation and design and its lesser included offenses of murder and involuntary manslaughter. However, the jury was unable to reach a verdict on the felony murder, aggravated robbery, or kidnapping charges. Subsequently, the court declared a mistrial on those counts. The charge of carrying a firearm while under disability was tried to the bench, and the court found the appellee guilty but decided to postpone sentencing until the other three counts were retried.

{¶ 7} After the trial court declared a mistrial, the appellee moved the trial court to dismiss the felony murder charge on which the jury had hung and to enter a judgment of acquittal on grounds of double jeopardy and collateral estoppel. The

court denied the appellee's motion. In a second trial, the state retried the appellee on the remaining charges, including the felony murder charge based on the aggravated robbery, and obtained convictions for each.

{¶ 8} The Franklin County Court of Appeals reversed the appellee's felony murder conviction, holding that the appellee's acquittal of aggravated murder with prior calculation and design and its lesser included offenses of murder and involuntary manslaughter in his first trial barred his subsequent prosecution on the felony murder charge. The appellate court based its conclusion on collateral estoppel, determining that the jury had decided in the appellee's favor in the first trial either of the common issues of his identity as a participant in these crimes or his purpose to kill. The appellate court also remanded the weapons under disability charge for a retrial.

{¶ 9} The cause is now before this court pursuant to the allowance of a discretionary appeal and cross-appeal.

---

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Joyce S. Anderson*, Assistant Prosecuting Attorney, for appellant and cross-appellee.

*Dennis C. Belli*, for appellee and cross-appellant.

---

**LUNDBERG STRATTON, J.**

{¶ 10} The issue presented to us in this case is whether the doctrines of double jeopardy and collateral estoppel apply when a jury finds a defendant not guilty as to some counts and is hung as to other counts. We find that these doctrines do not apply where the inconsistency in the responses arises out of inconsistent responses to different counts, not out of inconsistent responses to the same count. In such cases, we further find the prosecution is entitled to retry the hung-jury counts provided that other criteria, such as sufficiency of the evidence, are met to allow retrial.

{¶ 11} A review of the purpose and history of double jeopardy and collateral estoppel is useful in resolving this issue. Double jeopardy was established by the Fifth Amendment to the Constitution of the United States, which states: "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb * * *." The Fifth Amendment has been made applicable to the states through the Fourteenth Amendment.

{¶ 12} It is well established that the Double Jeopardy Clause protects against successive prosecutions for the same offense. *United States v. Dixon* (1993), 509 U.S. 688, 696, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556, 567. It protects a person who has been acquitted from having to run the gauntlet a second time. *Ashe v. Swenson* (1970), 397 U.S. 436, 445-446, 90 S.Ct. 1189, 1195, 25 L.Ed. 2d 469, 476-477. As stated in *Green v. United States* (1957), 355 U.S. 184, 187-188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204:

"The underlying idea [embodied in the Double Jeopardy Clause], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

{¶ 13} In addition to its primary function of safeguarding against governmental overreaching (see *Justices of Boston Mun. Court v. Lydon* [1984], 466 U.S. 294, 307, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311, 324), the double jeopardy guarantee protects a defendant's "'valued right to have his trial completed by a particular tribunal.'" *Crist v. Bretz* (1978), 437 U.S. 28, 36, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24, 31, quoting *Wade v. Hunter* (1949), 330 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978. Once a tribunal has decided an issue of ultimate fact in the defendant's favor, the double jeopardy doctrine also precludes a second jury

from ever considering that same or identical issue in a later trial. *Dowling v. United States* (1990), 493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed.2d 708, 717.

{¶ 14} Collateral estoppel is the doctrine that recognizes that a determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceedings. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer* (1916), 242 U.S. 85 [37 S.Ct. 68, 61 L.Ed. 161]." *Ashe, supra,* 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. Collateral estoppel generally refers to the acquittal prong of double jeopardy.

{¶ 15} However, the United States Supreme Court has held that double jeopardy does not apply to cases involving inconsistent verdicts and, by implication, hung juries. In *Dunn v. United States* (1932), 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358-359, the United States Supreme Court found that consistency in a verdict was not required and that where offenses were separately charged in counts of a single indictment, even though the evidence was the same in support of each, an acquittal on one count could not be pleaded as *res judicata* as to the other. The court found that the sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into such matters to resolve the inconsistency. The court stated: "'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'" *Id.*, quoting *Steckler v. United States* (C.A.2, 1925), 7 F.2d 59, 60.

**{¶ 16}** This principle of law was further affirmed in *United States v. Powell* (1984), 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461, where a defendant was charged with using the telephone to facilitate crimes of conspiracy and drug possession, crimes that were alleged in the indictment separately from the telephone solicitation charge, a compound indictment. In that case, a jury found the defendant not guilty of possession or conspiracy, but guilty of telephone solicitation to distribute cocaine. Even though possession and conspiracy were predicate felonies, the United States Supreme Court still held that the inconsistent verdicts could not be overturned. The court refused to weaken the *Dunn* rule, finding that "a criminal defendant already is afforded sufficient protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Id.* at 67, 105 S.Ct. at 478, 83 L.Ed.2d at 470. The court rejected attempts by the lower courts of appeals to carve out exceptions to the *Dunn* case, and rejected defendant's argument that the principles of *res judicata* or collateral estoppel should apply to verdicts rendered by a single jury where the jury acquitted the defendant of the predicate felony. The court held: "We believe that the *Dunn* rule rests on a sound rationale that is independent of its theories of res judicata, and that it therefore survives an attack based upon its presently erroneous reliance on such theories." *Id.* at 64, 105 S.Ct. at 476, 83 L.Ed.2d at 468.

**{¶ 17}** The court analyzed why inconsistent verdicts may work against the government as well as the defendant, and thus should not be used to grant the defendant a windfall when one cannot know the basis of the jury's conclusions. The court therefore decided that the jury verdicts must be accepted as they stand. To do otherwise is too speculative. The court concluded: "We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either

on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake. * * * But with few exceptions, * * * once the jury has heard the evidence and the case has been submitted, the litigants must accept the jury's collective judgment. Courts have always resisted inquiring into a jury's thought processes * * *; through this deference the jury brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality." *Id.* at 66-67, 105 S.Ct. at 477-478, 83 L.Ed.2d at 469-470.

{¶ 18} The United States Supreme Court has applied the same principles to hung juries. In *Richardson v. United States* (1984), 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242, the court reiterated its determination that neither a jury's failure to reach a verdict nor a trial court's declaration of a mistrial following a hung jury is an event that terminates jeopardy so as to bar a second trial on the mistried charges. *Id.* at 325, 104 S.Ct. at 3086, 82 L.Ed.2d at 251. The court explained the logic behind this conclusion as follows:

"'The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. * * * What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.'" *Id.*, 468 U.S. at 324-325, 104 S.Ct. at 3085-3086, 82 L.Ed.2d

8

at 250, quoting *Wade v. Hunter* (1949), 336 U.S. 684, 688-689, 69 S.Ct 834, 836-837, 93 L.Ed. 974, 978.

{¶ 19} The *Richardson* court reasoned that double jeopardy does not bar retrial on mistried counts unless there is some event that terminates the original jeopardy. *Id.*, 468 U.S. at 325, 104 S.Ct. at 3086, 82 L.Ed.2d at 251. The court specifically held that mistrial following a hung jury was not such an event.

{¶ 20} Having established that nothing in the federal Constitution bars a retrial after a hung jury, we now turn our attention to our own pronouncements on this issue. The issue of inconsistent verdicts in response to different counts was addressed in *State v. Adams* (1978), 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137, vacated on other grounds (1978), 439 U.S. 811, 99 S.Ct. 69, 58 L.Ed.2d 103. The court, in approving and following *Browning v. State* (1929), 120 Ohio St. 62, 165 N.E. 566, stated, at paragraph two of the syllabus:

"The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count. (*Browning v. State*, 120 Ohio St. 62 [165 N.E. 566], approved and followed.)"

{¶ 21} That proposition was reaffirmed in *State v. Brown* (1984), 12 Ohio St.3d 147, 12 OBR 186, 465 N.E.2d 889, and most recently approved and followed in *State v. Hicks* (1989), 43 Ohio St.3d 72, 78, 538 N.E.2d 1030, 1037.

{¶ 22} In *Brown*, the defendant was indicted on three counts of rape, one count of gross sexual imposition, one count of kidnapping, and one count of robbery. The jury found the defendant not guilty by reason of insanity as to two counts of rape and guilty as to the remaining counts in the indictment. Clearly that fact pattern involved common issues to all counts. The defendant argued that the jury could not consistently find the defendant sane as to some actions and insane as to others.

**{¶ 23}** Noting that the defendant did not contend that an inconsistency existed within a single count, the court found that the testimony in the case was that the defendant's "borderline personality" could fade "in and out of sanity." *Id.* at 149, 12 OBR at 188, 465 N.E.2d at 892. The court held that the finding that the defendant was insane as to two of the rape charges but sane as to the remaining charges did not require reversal of the convictions.

**{¶ 24}** Turning to the fact pattern involved in this case, this case clearly fits within the parameters of *Brown*. The defense argues that because the defendant was found not guilty of a lesser included offense in Count One, that finding is *res judicata* or collateral estoppel as to Count Two. However, a basic understanding of how a case is sent to the jury and how the counts are presented to the jury is key to understanding why the *Brown* holding is still good law.

**{¶ 25}** The jury in this case was instructed that the case involved two counts. Count One charged the appellee with aggravated murder with prior calculation and design. Count Two charged the appellee with felony murder based on aggravated robbery. The lesser included offenses tracked each separate count and were not dependent on each other.

**{¶ 26}** In instructing the jury and reviewing the verdict forms on the track involving Count One, aggravated murder with prior calculation and design, the judge instructed the jury to first consider aggravated murder by prior calculation and design.

**{¶ 27}** The court then instructed on the *lesser included charge of murder to Count One:*

"If you find the State failed to prove the element of prior calculation and design in the charge of aggravated murder, you may consider the lesser offense of murder *as to Count 1*." (Emphasis added.)

**{¶ 28}** The court later read the related verdict form to the jury as follows:

"We the jury being duly impaneled upon our oaths and the law and evidence in this case, and having found the defendant Mark E. Lovejoy not guilty of aggravated murder as he is charged in Count 1 of the indictment, do further find the defendant guilty of murder."

**{¶ 29}** The court next instructed on the *second lesser included charge to Count One:*

"If you find that the State failed to prove purpose beyond a reasonable doubt that the defendant purposely caused the death of Nathan Curry, you must find the defendant not guilty of aggravated murder and not guilty of murder *as to Count 1.* You may then consider involuntary manslaughter." (Emphasis added.)

**{¶ 30}** The court later read the related verdict form to the jury as follows:

"We the jury being duly impaneled and upon our oaths and law and evidence in this case, and having found the defendant Mark E. Lovejoy not guilty of aggravated murder, and not guilty of murder as he is charged in Count One of the indictment, do further find the defendant guilty of involuntary manslaughter."

**{¶ 31}** Count Two, felony murder based on the aggravated robbery, had a similar track:

"The defendant is charged with aggravated murder in Count 2 of the indictment. Before you can find the defendant guilty in Count 2, you must find beyond a reasonable doubt that on or about the 16th day of August, 1993, in Franklin County, Ohio the defendant purposely caused the death of Nathan Curry while the defendant was committing or attempting to commit or fleeing immediately after committing or attempting to commit aggravated robbery."

**{¶ 32}** The jury was asked to consider *lesser included offenses* of murder and involuntary manslaughter *to the Count Two track*, premised on aggravated robbery. The jury instructions and verdict forms paralleled the format of Count One.

**{¶ 33}** The jury, in closing arguments, jury instructions and verdict forms, was advised that it had two tracks to consider, Count One, premised on aggravated murder with prior calculation and design and the two lesser included offenses based on Count One, and Count Two, felony murder while committing an aggravated robbery with its two lesser included offenses.

**{¶ 34}** The lesser included offenses merely flowed from the original. The jury was not charged with only one set of lesser included offenses that could apply to either aggravated murder with prior calculation and design or felony murder based on the robbery. They were given two different sets of lesser included offense verdict forms. To find that collateral estoppel applies because the wording of the lesser included offenses of "murder" was the same in each count is to ignore the simple realities of the way the case went to the jury.

**{¶ 35}** Once the jury decided that prior calculation and design was not proven by the state, it could be considered logical for the jury to acquit the defendant of all charges in the track of Count One as the flow of the verdict forms guided them in that direction. The jury consistently hung on all charged offenses in the track of Count Two, which involved the issue of robbery and *its* lesser included offenses. However, speculation as to why the jury failed to reach a verdict on the felony murder count only demonstrates the difficulty with trying to analyze a jury's decision. The *Dunn* court's pronouncement that it is best to just "accept the jury's collective judgment" so as to preserve the sanctity of the jury process is still sound public policy. *Powell*, 469 U.S. at 67, 105 S.Ct. at 478, 83 L.Ed.2d at 470.

**{¶ 36}** This fact pattern is clearly distinguishable from *State v. Liberatore* (1983), 4 Ohio St.3d 13, 4 OBR 11, 445 N.E.2d 1116. In *Liberatore*, the victim was killed by a bomb placed in the car next to his, which was detonated by remote control. The defendant was charged with aggravated arson and aggravated murder with the aggravated arson as the predicate felony. The jury acquitted the defendant

of aggravated arson and hung on the aggravated murder charge. The court found that since aggravated arson was the predicate crime for the aggravated murder, a judgment of acquittal on the aggravated arson foreclosed retrial of the defendant on aggravated murder. *Id.* at 15, 4 OBR at 13, 445 N.E.2d at 1118.[1]

{¶ 37} In this case, had the jury acquitted the appellee of the robbery, and hung on Count Two, felony murder based on the aggravated robbery (an inconsistent verdict *within* a count), *Liberatore* would clearly apply and double jeopardy would attach. Robbery was the underlying predicate for Count Two.[2] However, *Liberatore* did not have two distinct tracks as in this case. Murder, as a lesser included offense of each count, is not the same as a predicate felony for an aggravated murder conviction. Thus, there is no need to reach the issues raised in *Liberatore* because *Liberatore* involved inconsistencies within the same count, an entirely different issue from that involved in this fact pattern.

{¶ 38} In conclusion, we see no reason to distinguish the fact pattern in this case from that in *Brown*. *Browning, Adams, Brown,* and *Hicks* remain good law and resolve the issues in this case. Therefore, we hold that when a jury finds a defendant not guilty as to some counts and is hung on other counts, double jeopardy and collateral estoppel do not apply where the inconsistency in the responses arises out of inconsistent responses to different counts, not out of inconsistent responses to the same count.

## CROSS-APPEAL

{¶ 39} The appellate court held that the appellee had to be retried on the charge of having a weapon under disability because it was error for the trial court

---

1. Justice Holmes dissented, arguing that since the defendant was not accused of placing the bomb himself, but rather was accused of being part of the organized crime murder scheme, the jury could have found the defendant not guilty of aggravated arson, but still guilty of being part of the conspiracy that directed the murder. *Id.* at 15-16, 4 OBR at 13-14, 445 N.E.2d at 1118-1119.
2. The *Liberatore* decision is, however, contrary to the United States Supreme Court's holding in *Dunn*, which did *not* reverse a conviction even though the defendant was found not guilty of the predicate offense.

to reopen the evidence *sua sponte* after closing arguments and take judicial notice of prior proceedings in an earlier case to supply a crucial fact that the state had failed to prove. The state did not appeal the appellate court's ruling on the judicial notice issue. However, the appellate court further found that in light of its resolution of the appellee's first two assignments of error, the appellee's third assignment of error which challenged the sufficiency of the evidence was moot and remanded the case to the trial court for a *retrial* on that charge. The appellee challenges that remand and argues that once the erroneous evidence was omitted, the court of appeals was obligated to review the remaining evidence and pass on its sufficiency.

**{¶ 40}** App.R. 12(A)(1) provides:

"On an undismissed appeal from a trial court, a court of appeals shall do all of the following:

"* * *

"(c) Unless an assignment of error is made moot by a ruling on another assignment of error, decide each assignment of error and give reasons in writing for its decision."

**{¶ 41}** Because the appellate court ruled on the judicial notice issue as it did, the issue of the sufficiency of the evidence was *not* moot. In fact, the sufficiency of the remaining evidence then became the *key* issue. To simply remand the weapon under disability charge for a retrial would give the state a "second bite at the apple" and a chance to present evidence it failed to offer at the first trial. After determining that the evidence of the conviction was erroneously considered by the trial judge, the appellate court should have reviewed the remaining evidence to determine whether it was sufficient to support a conviction.

**{¶ 42}** While the court of appeals found that the assignment of error regarding sufficiency of the evidence was moot, we find that the court did in fact pass on this issue when it stated at page 18 of the opinion, "If the court had not

14

taken judicial notice of this critical fact, the documents offered by the state were insufficient to prove that appellant was under a disability." Therefore, because that assignment of error *was* resolved, the decision to remand was improper. In this case, the Double Jeopardy Clause applies. In fact, this is what the Double Jeopardy Clause was intended to prevent. If the state fails to present sufficient evidence to prove every element of the crime, it should not get a second opportunity to do that which it failed to do the first time. Therefore, the charge of having a weapon while under disability is dismissed.

{¶ 43} Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court as to the felony murder, aggravated robbery, and kidnapping convictions. Further, we dismiss the charge of having a weapon under disability.

*Judgment reversed*

*and cause dismissed in part.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., PFEIFER and COOK, JJ., dissent.

―――――――――――

**COOK, J., dissenting.**

{¶ 44} Because I believe that the Double Jeopardy Clause should have barred Lovejoy's retrial for felony murder, I respectfully dissent.

{¶ 45} Unlike the defendants in the cases cited by the majority to support its position, Lovejoy did not seek to overturn a conviction on the grounds that the jury reached an inconsistent acquittal verdict in the same trial. Instead, Lovejoy asserted that double jeopardy barred a *second trial* before a *second jury* after his acquittal on a lesser included offense of the mistried count.

{¶ 46} The cases cited by the majority demonstrate that the Double Jeopardy Clause is aimed at protecting defendants against *multiple prosecutions* for the same offense and safeguards a defendant's valued right to have his trial

completed by a *particular tribunal*. Yet the majority concludes that cases involving inconsistent jury verdicts reached in a *single trial* control this case.

**{¶ 47}** The majority is undoubtedly correct that the several counts of an indictment are not interdependent and follow different tracks during the course of a trial. Both this court and the United States Supreme Court consistently have reached that conclusion. See, *e.g.*, *Dunn v. United States* (1932), 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356; *Browning v. State* (1929), 120 Ohio St. 62, 165 N.E. 566. That line of authority, however, does not answer the question presented here (*i.e.*, whether Lovejoy's acquittal on the charge of murder prevents his *retrial* for felony murder — a count on which the first jury hung).[3] Enforcement of inconsistent verdicts in a single trial does not implicate the constitutional concerns present where the state obtains a conviction following successive prosecutions. See *Nesbitt v. Hopkins* (C.A.8, 1996), 86 F.3d 118, 121.

**{¶ 48}** Similarly, the issue presented in this case is not resolved by *Richardson v. United States* (1984), 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242. *Richardson* did not involve an analysis of whether a jury verdict of acquittal that accompanies the declaration of a mistrial after jury deadlock on a related count may bar reprosecution under the Double Jeopardy Clause of the United States Constitution. The *Richardson* court simply resolved that judicial declaration of a mistrial in response to a jury's failure to reach a verdict is not an event that, *by itself*, terminates jeopardy so as to trigger the protections embodied in the Double Jeopardy Clause. *Id.* at 326, 104 S.Ct. at 3086, 82 L.Ed.2d at 251. In so holding, however, the *Richardson* court acknowledged that events such as an acquittal, or

---

3. In reaffirming the *Dunn* rule, the Supreme Court specifically noted that *Dunn*'s statements regarding *res judicata*, if not incorrect at the time, are no longer acceptable in light of more recent cases analyzing collateral estoppel. *United States v. Powell* (1984), 469 U.S. 57, 64, 105 S.Ct. 471, 476, 83 L.Ed.2d 461, 468. Nonetheless, the *Powell* court found the *Dunn* rule rests on sound rationale independent of its erroneous reliance on theories of *res judicata.* Accordingly, the *Dunn* rule is of limited value where, as here, multiple prosecutions invoke double jeopardy concerns not present in the *Dunn* scenario of inconsistent verdicts.

an appellate court's finding of insufficient evidence to convict, act to terminate jeopardy. *Id.* at 325, 104 S.Ct. at 3086, 82 L.Ed.2d at 251.

{¶ 49} Having explained why the cases cited by the majority do not mandate its conclusion, I next consider the arguments and authority presented by the parties. Additionally, because of the nature of this case, it is necessary to expand our constitutional analysis to include not only the protections embodied in the collateral estoppel (issue preclusion) prong of the Double Jeopardy Clause, but the concomitant protections present in its "same-offense" preclusion prong, as determined under the test enunciated in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309. Compare *State v. Broughton* (1991), 62 Ohio St.3d 253, 581 N.E.2d 541.

Applicability of Collateral Estoppel

{¶ 50} The state's preliminary argument for reversal of the appellate court's decision focuses on dicta found in the United States Supreme Court's opinion in *Ohio v. Johnson* (1984), 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425, 434, fn. 9, implying that the protections implicit in the doctrine of collateral estoppel are applicable only where the state prosecutes factually linked charges seriatim. The state argues that the court's statement in *Johnson* supports the distinction between cases of government overreaching—where a defendant is purposefully subjected to successive prosecutions that allegedly arise out of the same facts—and retrial of a defendant on grounds of manifest necessity occasioned by a jury's inability to arrive at a verdict. The state concedes that the doctrine of collateral estoppel is applicable to prevent the former scenario, but argues that the doctrine is inapplicable to the latter, as the concerns underlying the collateral estoppel doctrine are not present.

{¶ 51} Lovejoy relies on this court's decision in *State v. Liberatore* (1983), 4 Ohio St.3d 13, 4 OBR 11, 445 N.E.2d 1116, and federal circuit court authority to demonstrate that the state's interpretation of the *Johnson* footnote is erroneous.

**{¶ 52}** While, at first blush, the *Johnson* footnote appears to be directed to the situation presented in this case, closer analysis reveals that it is not. The *Johnson* court reviewed a case where a criminal defendant entered guilty pleas to lesser included offenses of the crimes charged, which the court accepted over the state's objection. The defendant then attempted to use his convictions on the guilty pleas as a sword to strike down the state's attempt to prosecute him on the other crimes for which he was indicted.

**{¶ 53}** *Johnson* involved prosecution following conviction without trial. In contrast, the state subjected Lovejoy to two trials—an initial trial and a later trial on the counts on which the first jury had been unable to agree on a verdict. In a literal sense, trial after a hung jury mistrial represents reprosecution of the defendant—seriatim prosecution. *Jeffers v. United States* (1977), 432 U.S. 137, 152, 97 S.Ct. 2207, 2217, 53 L.Ed.2d 168, 181. Accordingly, the collateral estoppel branch of the double jeopardy doctrine, which relates solely to prosecutions following an acquittal verdict, while wholly inapplicable to the *Johnson* facts, remains potentially applicable in the present case.

**{¶ 54}** In *Ashe v. Swenson* (1970), 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, the court recognized that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel. In defining the rule of collateral estoppel, the *Ashe* court stated: "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. As a component of the Double Jeopardy Clause, collateral estoppel "protects a man who has been acquitted from having to 'run the gantlet' a second time." *Id.* at 445-446, 90 S.Ct. at 1195, 25 L.Ed.2d at 476-477. The rule dictates that once a tribunal has decided an issue of ultimate fact in the defendant's favor, a *second jury* may not reach a directly contrary conclusion in a later trial. *Dowling v. United States* (1990), 493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed.2d 708, 717.

{¶ 55} Courts analyzing the issue presently under consideration have consistently held collateral estoppel applicable as a mandate of the federal Constitution's Double Jeopardy Clause. See, *e.g.*, *United States v. Shenberg* (C.A.11, 1996), 89 F.3d 1461, 1479; *United States v. McLaurin* (C.A.9, 1995), 57 F.3d 823, 826; *United States v. Bailin* (C.A.7, 1992), 977 F.2d 270, 275-276; *United States v. Frazier* (C.A.6, 1989), 880 F.2d 878, 883; *State v. Crate* (1996), 141 N.H. 489, 686 A.2d 318; *Ferrell v. State* (1990), 318 Md. 235, 248-256, 567 A.2d 937, 944-948. In reaching that conclusion, those courts have recognized that "'[a]llowing a second jury to reconsider the very issue upon which the defendant has prevailed serves no valuable function. To the contrary, it implicates concerns about the injustice of exposing a defendant to repeated risks of conviction for the same conduct, and to the ordeal of multiple trials, that lie at the heart of the double jeopardy clause.'" *Bailin, supra*, at 277, quoting *United States v. Mespoulede* (C.A.2, 1979), 597 F.2d 329, 336-337. I would approve *Liberatore, supra,* as this court's acknowledgment that the doctrine of collateral estoppel is applicable to bar retrial of mistried counts in criminal cases involving partial verdicts of acquittal.[4]

Defendant's Burden of Establishing a Factual Predicate

{¶ 56} A determination that the doctrine of collateral estoppel is potentially applicable to bar retrial of mistried counts, however, does not end the inquiry. Instead, it is proper next to review the appellate court's decision to determine

---

4. The majority's attempt to distinguish *State v. Liberatore* (1983), 4 Ohio St.3d 13, 4 OBR 11, 445 N.E.2d 1116, fails. Liberatore *was*, in fact, indicted on *separate counts* of aggravated arson and aggravated murder. Aggravated arson served as the predicate felony for the aggravated murder charge. Nevertheless, both statutory offenses were charged as separate counts in the indictment. This was also the case in *State v. Adams* (1978), 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137, where the court allowed conviction of the compound offense to stand despite acquittal in the same trial on a separate count containing its predicate offense.

Moreover, federal authority does not support the majority's distinction. In *United States v. Powell* (1984), 469 U.S. 57, 67-68, 105 S.Ct. 471, 478, 83 L.Ed.2d 461, 470, the court declined to carve out an exception to the *Dunn* rule where "the jury acquits a defendant of a predicate felony, but convicts on the compound felony."

whether it correctly concluded that the bar attaches in this case. In making that determination, a court must "'examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475-476, quoting Mayers & Yarborough, *Bis Vexari*: New Trials and Successive Prosecutions (1960), 74 Harv.L.Rev. 1, 38-39. It is the defendant's burden "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States* (1990), 493 U.S. 342, 350, 110 S.Ct. 668, 673, 107 L.Ed.2d 708, 719. The court has termed this burden a "factual predicate for the application of the doctrine." *Schiro v. Farley* (1994), 510 U.S. 222, 232, 114 S.Ct. 783, 790, 127 L.Ed.2d 47, 58.

{¶ 57} Upon review of the record, I am unconvinced that Lovejoy carried his burden of establishing the factual predicate. The court of appeals determined that the jury's verdict acquitting Lovejoy of murder was grounded on either of two conclusions—(1) that Lovejoy was not a participant in the crime, or (2) that Lovejoy did not act with purpose in causing Curry's death (the element of purpose is common to murder and felony-murder aggravated murder). Review of the evidence at trial, the charge to the jury, and Ohio law, however, does not compel that conclusion.

{¶ 58} The state's evidence did not implicate Lovejoy as the principal offender in Curry's murder. Instead, the state sought to impose criminal responsibility on Lovejoy as an aider and abettor. The state tried the defendant on two separate counts of aggravated murder. The first count charged that Lovejoy purposely caused Curry's death with prior calculation and design. In connection with the first count, the court also charged the jury on lesser included offenses of murder and involuntary manslaughter. The second count charged Lovejoy with

aggravated murder for purposely causing Curry's death in connection with the commission of a felony. Under the second count, the court instructed the jury on lesser included offenses of murder and involuntary manslaughter, as it had done in connection with count one.

{¶ 59} In attempting to prove that Lovejoy intended Curry's death, the state relied heavily on Lovejoy's participation in the aggravated robbery. According to the state, Lovejoy's motive to kill Curry resulted from commission of the robbery— to avoid retribution. Moreover, the bulk of the state's evidence on the prior-calculation-and-design murder charge relied on inferences from the manner in which the robbery was allegedly committed. The state produced scant evidence apart from Lovejoy's alleged participation in the robbery that would have demonstrated that Lovejoy and Stepherson (the principal offender in the murder) devised a plan to kill Curry.

{¶ 60} The court charged the jury as follows:

"When a person has engaged in a common design with another to commit aggravated robbery by force or violence or in a manner likely to produce death, it may be inferred that such person intended to cause the death of any other person who is killed during the commission of the offense. That inference, however, is not conclusive, but it may be considered in determining intent."

{¶ 61} The jury charge is a correct statement of Ohio law. R.C. 2903.01(D); *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph one of the syllabus. For the inference to be made, however, the jury was first required to determine that Lovejoy engaged in a common design with an accomplice to commit the robbery. Because the jury was unable to agree on a verdict as to count two and its lesser included offenses and count three (the aggravated robbery charge itself), it is plausible that the jury considered itself restrained from considering evidence related to the robbery in connection with count one.

**{¶ 62}** Without the benefit of inferences drawn from commission of the robbery, the jury was left with the scantiest of evidence upon which to base Lovejoy's purpose. This may be why the jury returned acquittal verdicts on all of the charges related to the prior-calculation-and-design count—because, aside from proof of the robbery, which was an element of the felony-murder charge, there was little independent evidence upon which a jury could ground a finding of purpose to kill. Given this scenario, the jury's acquittal on the charges related to the prior-calculation-and-design murder count does not equal a decision favorable to Lovejoy on the issues of purpose or identity regarding the felony-murder charge.

**{¶ 63}** Finally, considering the court's instructions, the jury determinations do not clearly establish a finding in Lovejoy's favor on the issue of purpose or identity. Instead they reveal only inconsistency.

**{¶ 64}** Regarding the felony-murder count, the jury was charged, "If you find that the State failed to prove beyond a reasonable doubt that the defendant purposely caused the death of Nathan Curry, you will find the defendant not guilty of aggravated murder and not guilty of murder * * *." The court also generally charged the jury, "If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty." Here, if we were to assume the jury unanimously determined the issue of identity or purpose to kill in Lovejoy's favor in connection with his acquittal of murder at the first trial, the jury would have also been required to enter an acquittal on the felony-murder charge and its lesser included offense of murder. Compare *United States v. Aguilar-Aranceta* (C.A.1, 1992), 957 F.2d 18. Instead, the jury failed to agree on any verdict regarding count two.

**{¶ 65}** In sum, the jury verdict did not necessarily depend on a finding that Lovejoy was not a participant in the crime or that Lovejoy lacked purpose to cause Curry's death. Accordingly, I would conclude that Lovejoy has not carried his burden of establishing a finding in his favor on either issue.

Acquittal on "Same Offense" as an Act Terminating Jeopardy

**{¶ 66}** One final issue requires analysis—should Lovejoy's acquittal of murder in connection with count one (prior-calculation-and-design murder) bar a second trial after a hung jury mistrial on count two (felony-murder) under the *Blockburger* test? In *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309, the court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two or only one, is whether each provision requires proof of a fact which the other does not."

**{¶ 67}** Other courts, relying on *Richardson*, have reasoned that jeopardy continues on any count resulting in a hung jury mistrial and a defendant's only protection against a second trial resides in the collateral estoppel doctrine.[5] It is my

---

5. Demonstrative of this trend is the Seventh Circuit Court of Appeals' decision in *United States v. Bailin* (C.A.7, 1992), 977 F.2d 270, 275-276, which has been either expressly adopted or cited with approval by many state and federal courts. See, *e.g., United States v. Shenberg* (C.A.11, 1996), 89 F.3d 1461, 1479.

The *Bailin* court cited *Richardson* for the proposition that the defendant therein remained in continuing jeopardy regarding counts for which a jury was unable to reach a verdict, resulting in the court's declaration of a mistrial. Despite finding continuing jeopardy, the *Bailin* court held that collateral estoppel was applicable, apparently analyzing collateral estoppel as a concept independent of jeopardy concerns.

In *Ashe v. Swenson* (1970), 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, the court held that collateral estoppel is *embodied* in the Fifth Amendment's guarantee against double jeopardy and, therefore, is applicable to the states through the Fourteenth Amendment. *Id.* at 445, 90 S.Ct. at 1195, 25 L.Ed.2d at 476. As a matter of federal constitutional law, collateral estoppel is derivative of the Double Jeopardy Clause, and therefore its protections should attach only after jeopardy has terminated. I find no authority in Supreme Court precedent that would impose concepts of collateral estoppel embodied in the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution upon the states outside of that clause's application.

The *Bailin* court reasoned that "collateral estoppel is applicable in criminal cases *only when double jeopardy is not.*" (Emphasis *sic.*) It supports this statement by postulating that if collateral estoppel were to operate only in the double jeopardy sphere, *Ashe* would be overruled and collateral estoppel would become a nullity. *Bailin, supra,* 977 F.2d at 275.

I believe an acquittal terminates jeopardy not only on the count for which the defendant received an acquittal verdict, but also as to separate offenses that share common issues of ultimate fact necessarily determined in a defendant's favor as subsumed in an acquittal verdict, as determined under the *Ashe* test. *Ashe* embodies the Supreme Court's recognition that, for purposes of double jeopardy, there is no constitutional distinction between reprosecuting a criminal defendant on the same count for which he received an acquittal verdict and reprosecuting a criminal defendant on a

belief that this conclusion results from a reading of *Richardson* that is unduly formalistic, resulting in a strained attempt by courts to reason that collateral estoppel applies outside of jeopardy concepts.

**{¶ 68}** As a prerequisite to application of the double jeopardy doctrine, *Richardson* requires only the occurrence of "some event" terminating the original jeopardy. *Richardson*, 468 U.S. at 325, 104 S.Ct. at 3086, 82 L.Ed.2d at 251. The *Richardson* court referred to an acquittal as being such an event, but never stated whether an acquittal on one count may terminate jeopardy as to another.

**{¶ 69}** In *Price v. Georgia* (1970), 398 U.S. 323, 329, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300, 305, the court recognized an implied acquittal (where a jury returns a conviction on a lesser included offense when given a choice between a lesser and greater offense) as an event that terminates jeopardy. Conceptually, a jury's silence regarding a greater offense in the implied-acquittal context is different from a court's declaration of a mistrial for the jury's inability to reach a verdict. In the implied-acquittal scenario, we may assume that the jury considered and rejected conviction of the greater offense. In the hung-jury-mistrial scenario, that inference is foreclosed. Nevertheless, the *Price* court's recognition of an implied acquittal as an event that terminates jeopardy argues against an overly formalistic reading of *Richardson,* by demonstrating that an acquittal on one charge may terminate jeopardy as to another.

**{¶ 70}** The *Richardson* court, citing *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, also recognized that a judicial declaration of

---

separate offense involving a common issue of ultimate fact that was decided in the defendant's favor at an earlier trial. *Ashe,* 397 U.S. at 446, 90 S.Ct. at 1196, 25 L.Ed.2d at 477.

"[A]n acquittal 'represents a *resolution*, correct or not, of some or all of the factual elements of the offense charged.' (Emphasis added.)" *Justices of Boston Mun. Court v. Lydon* (1984), 466 U.S. 294, 309, 104 S.Ct. 1805, 1814, 80 L.Ed.2d 311, 325, quoting *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642, 651. The guarantee against double jeopardy extends to protect "the accused from attempts to relitigate the facts underlying a prior acquittal." *Brown v. Ohio* (1977), 432 U.S. 161, 165-166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194.

insufficient evidence to convict is an event that terminates jeopardy. *Richardson*, 468 U.S. at 325, 104 S.Ct. at 3086, 82 L.Ed.2d at 251. The *Burks* court held that an unreversed appellate ruling that the government had failed to introduce sufficient evidence at a first trial terminated the defendant's jeopardy, because that ruling constituted a decision that the government had failed to prove its case. *Burks,* 437 U.S. at 10-11, 98 S.Ct. at 2147, 57 L.Ed.2d at 9.

{¶ 71} In determining whether jeopardy terminates after a trial resulting in a partial verdict and a hung jury mistrial, a rigid, mechanistic rule that the defendant always remains in continuing jeopardy regarding those counts for which the court declared a mistrial is inappropriate. See *Illinois v. Somerville* (1973), 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 432. Instead, an acquittal verdict should terminate jeopardy not only as to the charge for which it is returned, but also as to any charge that would require the state to prove the acquitted charge as a subcomponent. The acquittal demonstrates a resolution, correct or not, that the state has failed to prove the elements of that offense after one full and fair opportunity to do so. To that decision, the Double Jeopardy Clause affords finality. *Dowling, supra,* 493 U.S. at 355, 110 S.Ct. at 676, 107 L.Ed.2d at 722 (Brennan, J., dissenting); *Fong Foo v. United States* (1962), 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629, 631.

{¶ 72} It would be repugnant to the principles of double jeopardy to subject a defendant to a second trial on a compound offense that required him to defend against that same charge (as a subcomponent of a compound offense) for which he formerly received a verdict of acquittal (*e.g.*, felony-murder trial after acquittal of the underlying felony). The same concern arises where a defendant is retried on a greater offense after a hung jury mistrial, where the original jury acquitted the defendant of a lesser included offense (*e.g.*, prior-calculation-and-design murder trial after acquittal of murder). In contrast, where a jury acquits on a compound offense but is hung on the predicate offense, the same concerns are not present on

the retrial of the predicate offense—the state will not again seek to prove that the defendant committed an offense upon which he was formerly acquitted (*e.g.,* hung jury on the underlying felony and acquittal of felony-murder aggravated murder). The same is true where a defendant is retried on a lesser included offense after a hung jury mistrial, where a jury formerly acquitted the defendant of the greater offense (*e.g.,* hung jury on murder and acquittal of prior-calculation-and-design aggravated murder).

{¶ **73**} In this case the jury acquitted Lovejoy of murder under R.C. 2903.02 in connection with count one. As stated in the Legislative Service Commission's comment to R.C. 2903.02, "the offense can be a lesser included offense to both forms of aggravated murder." In fact, in this case, the court gave an identical charge of murder as a lesser included offense under both counts. Both counts involved the same victim, the same conduct, and the same proof. There is no legal basis under which the murder charges under counts one and two may be distinguished.

{¶ **74**} Because, at the second trial, to gain a conviction on the felony-murder charge the state was required to prove every element of the formerly acquitted murder charge, the Double Jeopardy Clause prohibited Lovejoy's retrial for aggravated murder. The prior acquittal terminated Lovejoy's jeopardy on the mistried aggravated murder charge, and *Blockburger* may be applied to bar the second trial.

Issue on Cross-Appeal

{¶ **75**} Consistent with *Lockhart v. Nelson* (1988), 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265, the appellate court's ruling that the trial court erred in taking judicial notice of Lovejoy's prior conviction does not bar Lovejoy's retrial on the charge of having a weapon while under a disability, despite any claim that, absent judicial notice, the state's evidence was insufficient to support a conviction.

{¶ **76**} The test announced in *Lockhart* looks to all the evidence actually admitted to determine sufficiency for purposes of the double jeopardy doctrine. *Id.*

26

at 40, 109 S.Ct. at 290-291, 102 L.Ed.2d at 273. That the court admitted evidence erroneously goes only to ordinary issues of trial error and has fundamentally different implications from a reversal based on evidentiary insufficiency. Trial error does not imply guilt or innocence of the defendant, but is a determination that the defendant has been convicted through a defective process. *Id.* Accordingly, the appellate court acted correctly in remanding the case for a new trial after determining that the trial court erred in its use of judicial notice.

Conclusion

{¶ 77} In accordance with the above analysis, I would affirm the judgment of the appellate court.

MOYER, C.J., and PFEIFER, J., concur in the foregoing dissenting opinion.

_____