OPINION
{¶ 1} Defendant-appellant, Joseph Nicosia, appeals from a Jefferson County Common Pleas Court judgment convicting him of theft following a jury trial.
 {¶ 2} Sometime during the evening of August 18, 2003, Paul and Debra Walkup's Mingo Junction home was broken into. Several items were stolen including cash, a ring, and an open carton of USA Gold cigarettes.
 {¶ 3} That afternoon, appellant was hanging out with Ron Bone, Katherine Dougherty, and Dawn Higgins at Bone's camper. The group left the camper and went to Weirton to help Higgins move a television at her mother's house. Shortly after they returned to the camper Chaz Patton came and picked up appellant. The two left together and returned after approximately a half an hour. They picked up Bone and the three then left again in Patton's car.
 {¶ 4} Around 7:30 that evening, Officer Rana Roe noticed appellant and Patton in Patton's car near the Walkups' residence. She did not stop them, but knew who they were and noticed them on a side street by the Walkups' house. Later, at 10:26 p.m., Officer Jeffrey Kamerer stopped Patton's car on County Road 7E for speeding. Patton was driving and appellant and Bone were passengers. They were approximately a quarter mile away from the Walkup residence. Officer Kamerer noticed that the three men were dressed in all black. He also noticed an open carton of USA Gold cigarettes on the back seat next to Bone.
 {¶ 5} Patton later dropped appellant and Bone off at Bone's camper. Dougherty stated that they brought an open carton of USA Gold cigarettes to the camper with them.
 {¶ 6} According to Higgins, later that evening, appellant confided to her that he and Patton busted in the back door of the Walkups' house, got scared, and went back to the camper to get Bone. They then returned to the house where Bone stood outside while appellant and Patton went in the house. Appellant told Higgins that they took some cash.
 {¶ 7} Bone also stated that he went with appellant and Patton to the Walkups' house and waited outside while the other two went in.
 {¶ 8} According to Dougherty, a few days later, Bone told her that appellant and Patton had attempted to break into the Walkups' safe. Bone also gave her a cigar box containing a ring, some coins, and a picture of Bone's cousin and told her that appellant wanted her to keep it for him. At trial, Mrs. Walkup identified the ring as belonging to her and the coins as belonging to her husband.
 {¶ 9} A Jefferson County Grand Jury indicted appellant on one count of burglary, a second degree felony in violation of R.C. 2911.12(A)(2), and one count of theft, a fifth degree felony in violation of R.C.2913.02(A)(1). The indictment was later amended to change the burglary charge to a violation of R.C. 2911.12(A)(3), a third degree felony, and to include complicity to these charges.
 {¶ 10} After a hung jury and a mistrial, the case proceeded to a second jury trial on April 6, 2004. This time the jury found appellant guilty of theft and not guilty of burglary. The trial court entered judgment on the verdict, sentenced appellant to eight months in prison, and ordered him to make restitution to the victims.
 {¶ 11} Appellant filed a timely notice of appeal on May 10, 2004.
 {¶ 12} Appellant raises one assignment of error, which states:
 {¶ 13} "The trial court erred in denying the defendant's motion to set aside the verdict due to its inconsistency."
 {¶ 14} Appellant argues that the trial court should have granted his motion to set aside the jury's verdict because it was inconsistent. He contends that the theft he was convicted of was an element of the burglary he was acquitted of. Therefore, he asserts the jury could not find him guilty of theft and not guilty of burglary. Appellant claims that we must examine the court's instructions to the jury. He notes that the court instructed the jury that the "criminal offense" as found in the burglary charge included the crime of theft. Therefore, he reasons, the jury's verdict does not logically make sense because if the jury believed that he did not commit the burglary, which included the crime of theft, they could not convict him of theft either. Finally, appellant contends that there was not competent, credible evidence that he committed the theft.
 {¶ 15} The Ohio Supreme Court has held, "[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." State v. Lovejoy (1997), 79 Ohio St.3d 440, at paragraph one of the syllabus, 683 N.E.2d 1112. Thus, inconsistent verdicts on different counts do not justify the reversal of an otherwise valid conviction. State v. Fernandez, 11th Dist. No. 2001-L-162, 2002-Ohio-7140.
 {¶ 16} The jury convicted appellant of theft in violation of R.C.2913.02(A)(1), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." And the jury acquitted appellant on the burglary charge, a violation of R.C. 2911.12(A)(3), which provides: "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * *, with purpose to commit in the structure * * * any criminal offense."
 {¶ 17} By examining the statutory elements, we see that the requirements for a theft conviction are distinct from the elements for a burglary conviction. In this case, the jury could have concluded that appellant either obtained or exerted control over the bounty from the burglary with the purpose of depriving the Walkups of their property. It could have also concluded that appellant either did not trespass into the Walkups' house or that he entered the Walkups' house with consent.
 {¶ 18} In a somewhat similar case, a defendant was convicted of uttering but acquitted of forgery. State v. Pruett (Apr. 12, 2001), 8th Dist. No. 78094. The defendant appealed arguing that the verdicts were inconsistent because forgery is an element of uttering. In finding that the verdicts were not inconsistent, the court reasoned that it was possible that the jury believed the defendant uttered a forged instrument, but did not personally forge the uttered document. The court held that it did not have to be convinced that the jury decided the case on that basis, but it only needed to be convinced that the possibility existed that the jury decided the case on that basis.
 {¶ 19} Similarly, in this case, the possibility exists that the jury believed that appellant did not enter the Walkup residence unlawfully, but did exert control over the stolen items with purpose to deprive the owners thereof. As was the case in Pruett, we need not be convinced that the jury decided the case on this basis, but only that the possibility existed that the jury decided the case on this basis. Given the following evidence, it is reasonable to conclude that the jury decided the case on this basis.
 {¶ 20} First, Deborah Walkup testified. She stated that she and her husband were out of their home from 5:30 p.m. until approximately 11:15 p.m. working at their carryout store. (Tr. 11, 14). Around 7:00 p.m., she noticed appellant in the store. (Tr. 11). She stated that she knew appellant because he hung around with her daughter for awhile and he had been to their house once before. (Tr. 12-13). Mrs. Walkup noticed that appellant left with Patton. (Tr. 12). When the Walkups returned home that night, Mrs. Walkup testified, they realized someone had broken into their house because the back door was damaged. (Tr. 14). Mrs. Walkup testified that several items were stolen from her home including approximately $1,300 cash, her mother's wedding ring, collectible coins, some sports cards, and an open carton of USA Gold cigarettes. (Tr. 15-16). She also testified that they noticed their safe had been tampered with but unopened. (Tr. 16). Finally, Mrs. Walkup identified her husband's coins and her mother's wedding ring. (Tr. 17-18). These items were in a cigar box labeled State's Exhibit 1. (Tr. 17).
 {¶ 21} Officer Roe testified that on the night in question she noticed Patton and appellant in Patton's car near the Walkups' home at approximately 7:30 p.m. (Tr. 27-28, 32).
 {¶ 22} Officer Kamerer testified that he pulled Patton over for speeding that night at 10:26 p.m. about a quarter mile from the Walkups' home. (Tr. 40-41, 45). He stated that Patton was driving and appellant and Bone were passengers. (Tr. 42). Officer Kamerer noticed that the three men were dressed in all black clothing. (Tr. 43). He also noticed an open carton of USA Gold cigarettes on the back seat. (Tr. 43).
 {¶ 23} Dougherty testified that on the night in question she, Higgins, Bone, and appellant left Bone's camper to go to Higgins' mother's house to move a television. (Tr. 86-87). Sometime after they returned to the camper, Patton came by and appellant left with him. (Tr. 88). Dougherty testified that before he left with Patton, appellant changed his clothes from tan pants to black pants and a black shirt. (Tr. 94-95). She stated that the two returned after a half an hour or so, picked up Bone, and left again. (Tr. 91-92). Later Patton dropped appellant and Bone off at the camper and left. (Tr. 93). Sometime that night she noticed one of the men brought an open carton of USA Gold cigarettes into the camper. (Tr. 103).
 {¶ 24} Several days later, Dougherty testified that she was hanging out with Bone and Higgins at the camper. (Tr. 107). She stated that Bone gave her a cigar box containing a ring, gold coins, and a picture of Bone's cousin. (State's Exh. 1; Tr. 107, 110). He told Dougherty that appellant had asked him to give the box to her. (Tr. 109). Dougherty testified that Bone told her that the items in the box were not supposed to be found. (Tr. 109). She stated that Bone also told her that appellant and Patton had tried to open a safe but could not get it open so they came and got him so that he could try to open it. (Tr. 111).
 {¶ 25} Higgins testified that when Patton came to pick appellant up, around 8:30 p.m., appellant changed into all black clothes. (Tr. 153). She stated that appellant left with Patton and returned after 30 to 45 minutes. (Tr. 155). When the two returned, they picked up Bone and left again. (Tr. 155). Upon their return, 30 to 45 minutes later, appellant changed out of the black clothes. (Tr. 155-56).
 {¶ 26} Later that evening, Higgins testified, appellant asked her if he could trust her. (Tr. 157). She stated that appellant then told her when they left the camper the first time, he and Patton busted in the back door of a house but they got scared so they came back and got Bone. (Tr. 157). Appellant told Higgins that they then went back to the house and that Bone stood outside while he and Patton went in and stole $600 in cash. (Tr. 157-58).
 {¶ 27} Bone also testified in this case. He pled guilty to burglary and complicity to theft in connection with this case. (Tr. 176-77). Bone, like Higgins and Dougherty, testified that appellant left the camper with Patton on the night in question. (Tr. 181). After 30 to 45 minutes, Bone testified, appellant and Patton returned and asked him to go for a ride with them. (Tr. 183). Bone stated that they went to the Walkups' house. (Tr. 184). Appellant told Bone that he wanted to talk to the Walkups' daughter, his ex-girlfriend. (Tr. 184). Bone stated that when they got to the Walkups' house, appellant and Patton went around to the back of the house while he waited outside. (Tr. 185). He testified that appellant and Patton came out of the house a few minutes later and they left. (Tr. 185). Bone also testified that when he, appellant, and the girls went to a hotel that night, appellant paid cash for the rooms. (Tr. 190).
 {¶ 28} Appellant also called several witness in his defense.
 {¶ 29} First, Candi Patton, Charles Patton's sister testified. Ms. Patton testified that Patton and appellant were at her apartment eating spaghetti on the night in question from approximately 8:50 p.m. until 9:45 p.m. (Tr. 207-208).
 {¶ 30} Next, Keith Scott, appellant's step-father testified. However, he did not testify as to any of the events in question.
 {¶ 31} Finally, Patton testified. Patton stated that he picked appellant up at Bone's camper a little before 9:00 p.m. on the night in question. (Tr. 231). He said that the two of them went to his sister's house for dinner. (Tr. 231-32). Patton testified that they left his sister's home after approximately 45 minutes and went back to the camper where they picked up Bone. (Tr. 232-33). He stated that they went to shoot some hoops and smoke some weed. (Tr. 233). During their ride, Patton stated that Bone told him that he just got done "doing a job." (Tr. 234-35). Patton stated that he knew Bone meant he just stole something. (Tr. 235). Finally, Patton testified that neither he nor appellant ever burglarized the Walkups' house. (Tr. 238).
 {¶ 32} Given this evidence, it is possible to conclude that the jury found reasonable doubt as to whether appellant burglarized the Walkups' home but no reasonable doubt that at one point appellant exerted control over the Walkups' belongings without their consent and with purpose to deprive them of their property. Dougherty testified that Bone gave her the cigar box as per appellant's request. And Higgins testified that appellant told her he took $600 from the house. Thus, the evidence demonstrated that appellant, with purpose to deprive the owners of their property, exerted possession or control over the Walkups' property without their consent. Appellant did not present any evidence to the contrary.
 {¶ 33} However, appellant did present a witness who testified that he did not break into the Walkups' home. Patton testified he was with appellant that night and they did not burglarize the Walkups' home. Thus, the jury could have believed that appellant did not go into the Walkups' house. Additionally, Bone testified that appellant told him they were going to the Walkups' home so that appellant could talk with his ex-girlfriend, the Walkups' daughter. This could have led the jury to think that appellant may have entered the house with the Walkups' daughter's consent.
 {¶ 34} Hence, we can reasonably presume that the jury found that appellant exerted possession or control over the Walkups' property without their consent and at the same time found that reasonable doubt existed as to whether appellant actually trespassed in the Walkups' house by force, stealth, or deception.
 {¶ 35} This review of the evidence also shows that appellant's other contention, that being that there was not competent, credible evidence to support his theft conviction, is without merit. The evidence discussed above supports his conviction.
 {¶ 36} Accordingly, appellant's assignment of error is without merit.
 {¶ 37} For the reasons stated above, the trial court's decision is hereby affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.