OPINION
{¶ 1} Defendant-appellant, Naiem Firouzmandi, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty on six counts of aggravated robbery, 12 counts of robbery and six counts of kidnapping, each with three-year firearm specifications. Appellant also appeals the trial court's imposition of six consecutive five-year terms of imprisonment, plus six three-year terms for the firearm specifications, to be served consecutively to each corresponding five-year term, and also to be served consecutively with one another, for a total aggregate sentence of 48 years.
 {¶ 2} This case arises out of six armed robberies of pizza delivery persons, all of which occurred while the delivery persons were attempting to deliver pizzas to either 5760, 5770 or 5790 Roche Drive in Columbus. The robberies took place during the time period beginning January 24, 2003 and ending February 11, 2003.
 {¶ 3} One of the robberies involved a pizza delivery employee named Edward A. Steigerwald. On February 1, 2003, Steigerwald approached the designated delivery area, which was dark. He turned on his flashlight and proceeded down some steps. A figure approached him from the rear of the building. Steigerwald directed the beam of his flashlight to the person's face. Steigerwald testified, "I tried to get a visual, and I tried to basically look into his face because that's something that normally wouldn't change." He stated he got a long look at the robber's face.
 {¶ 4} Steigerwald noticed that the man had a shiny, aluminum or stainless steel gun off of which the flashlight's beam gleamed. The man motioned to Steigerwald to be quiet and to turn around. The man searched Steigerwald's pants pockets and took $37. Steigerwald was able to get another look at the robber before the robber finally motioned that Steigerwald could leave the scene, which he immediately did. Steigerwald remembered that the robber had a ruddy, olive-type complexion and a "chin beard." He contacted police upon his return to the pizza shop.
 {¶ 5} When police presented him with a photo array for identification, Steigerwald selected one photo, and indicated he was "relatively sure" that this was the robber. However, because the robber had a beard and the man pictured did not have a beard, he requested to see another picture of the person, and declined to make a positive identification that day. The next day, he called the detective and said he was sure that he had picked out the photo of the man who robbed him, but he still wanted to see another picture. The detective provided him with a second photo, and showed it to him in a new photo array, whereupon Steigerwald definitively identified the same man — appellant.
 {¶ 6} Though he testified to his memory being "not the best," Steigerwald identified appellant at trial as the man who robbed him, and identified State's Exhibit L-3, a gun found during a search of appellant's apartment, as the weapon brandished by the man who robbed him.
 {¶ 7} On cross-examination, the defense asked Steigerwald about a photo array shown to him roughly four months before trial by a defense investigator named Lorraine Galvin. The defense showed the photo array to Steigerwald and asked whether it was the same array that Galvin had shown him. He stated he could not recall because, "when she was in, I was busy." When asked whether he had told Galvin that photo number five was very similar to the perpetrator, Steigerwald stated he could not recall. He stated he did not give Galvin any positive identification from her photo array. He testified that because he was so busy at the time, he had not really given the array the attention he should have.
 {¶ 8} He stated that he called Galvin about 20 minutes after she left to explain to her that she had caught him off guard and he had not been prepared to sit down and go over the incident with her. He testified that he did not reach Galvin, and left a message, but she never returned his call. He related that he intended to tell her that whatever he said during their conversation was said in haste and "I may have made a bad decision in what I said." Finally, when asked whether photo number four in Galvin's array was the face he identified as being appellant in photo number four of the first photo array shown to him by police, Steigerwald said that the faces were similar.
 {¶ 9} The victims in three of the other robberies identified appellant as the robber, but two other victims could not identify their robbers. The sixth victim identified appellant shortly after the robbery occurred. Three of the victims testified that there were two perpetrators involved in the robbery.
 {¶ 10} In order to tie all six robberies to the same perpetrator, the prosecution relied, in part, on the following facts adduced from victims' testimony. Each pizza delivery order was made to one of three similar addresses at an apartment complex on Roche Drive; each order was made to a different pizza shop, so no delivery person would be on notice that any robbery had recently occurred at the same location; each robbery occurred after sunset; during each robbery the perpetrator was not immediately visible, and would come around from behind the building or would otherwise become visible only after the delivery person had begun descending a stairway, or had approached the door of the apartment to which he was attempting to deliver his pizza.
 {¶ 11} A Columbus police officer, who responded to the sixth robbery, followed fresh footprints in the snow from the scene to appellant's apartment, located at 5770 Roche Drive, Apartment E. Appellant answered the door. The apartment was secured overnight by police, and police executed a search warrant of the premises the following morning. They recovered a gun (State's Exhibit L-3), an empty wallet under a mattress, and five live rounds of ammunition on the entertainment center in the living room. The gun was operable and bore no fingerprints.
 {¶ 12} Appellant testified in his own defense. He denied involvement in any of the robberies, and stated that State's Exhibit L-3 is not his gun. He stated he believes his brother was involved. He testified that his brother owns a gun and has prior convictions for robbery. According to appellant, his brother often had access to his apartment, including a key to the apartment. He testified that his brother kept some belongings at appellant's apartment, including coats and jackets. Appellant tried on a coat confiscated during the search of his apartment that resembled a coat described by one of the robbery victims; the coat was a size XXXXL, but appellant stated he was only 5'4" or 5'5" and weighs 125 to 130 pounds. Appellant testified that his brother is 5'10" tall and weighs 175 to 180 pounds. This matched the physical description of the perpetrator given by Steigerwald to police. This also matched the physical description of one of two perpetrators given by another of the robbery victims.
 {¶ 13} During the presentation of its evidence, the defense called its investigator, Lorraine Galvin. She testified that on May 30, 2003, she interviewed Steigerwald at his workplace about his recollections of the robbery perpetrated upon him. During the interview, she showed Steigerwald a photo array of six men. A photo of appellant's brother, Nima Firouzmandi, occupied the fourth position, while appellant's photo occupied position number five. Galvin testified that Steigerwald told her that number five looked like the man who had robbed him. Before the defense could inquire further, the state interposed an objection.
 {¶ 14} During a sidebar conference outside the hearing of the jury, the defense said that Galvin was prepared to offer testimony about a statement Steigerwald made to her during their May 2003 interview that was inconsistent with his trial testimony, and argued that such testimony should be admitted pursuant to Evid.R. 613. The defense pointed out that it had given Steigerwald an opportunity, on cross-examination, to explain or deny the statement, and he had denied making the statement, thus triggering the permissibility of the defense introducing extrinsic evidence of same.
 {¶ 15} Specifically, the defense proffered that Galvin would testify, consistent with her report, that after she showed Steigerwald her photo array, he stated that photo number five (appellant) "looked a lot like" the man who robbed him, but that he then looked at photo number four (appellant's brother) and identified this photo as being the man who in fact robbed him. The court read the following portion of the report for transcription during the sidebar conference, just before ruling that Galvin's testimony did not contain evidence of a statement inconsistent with Steigerwald's trial testimony:
He then stated that he thought it was number four and noted that number four had an even more slanty jawline than number five and that number four might be him. He said that number five's hairline was straight across and how he remembered the suspect's being rather than having a part. He said that he was pretty sure that the man who robbed him was number four. He said he would probably be able to identify him in court.
(Tr., at 203.)
 {¶ 16} Upon ruling that Galvin's report did not constitute evidence of a statement inconsistent with Steigerwald's trial testimony, pursuant to Evid.R. 613, the trial court sustained the state's objection to the intended line of questioning of Galvin, whereupon the defense rested its case.
 {¶ 17} On appeal, appellant presents seven assignments of error, as follows:
First Assignment of Error
The State's use of Appellant's silence for impeachment purposes violated his Due Process rights guaranteed by the Fifth andFourteenth Amendments to the United States Constitution.
Second Assignment of Error
The trial court erred by permitting the prosecution to cross-examine the accused on irrelevant, inflammatory and unfairly prejudicial issues thereby depriving him of a fair trial.
Third Assignment of Error
The trial court erred by precluding the defense from introducing evidence of a prior inconsistent statement made by a key prosecution witness.
Fourth Assignment of Error
The trial court erred in ordering the sentences to be served consecutively when the record did not demonstrate the factors enumerated in R.C. 2929.14(E)(4).
Fifth Assignment of Error
Appellant's convictions are against the manifest weight of the evidence.
Sixth Assignment of Error
Appellant's convictions are not supported by sufficient, credible evidence.
Seventh Assignment of Error
Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.
 {¶ 18} We begin by addressing appellant's third assignment of error. In its brief, the state has conceded error under this assignment. The state and this court agree that Galvin's testimony would, as appellant urges, have provided evidence of a prior, inconsistent statement of Steigerwald, and the trial court erred in not admitting Galvin's testimony pursuant to Evid.R. 613. Because this was not harmless error, the judgment must be vacated and a new trial ordered. See Crim.R. 52(A). Accordingly, appellant's third assignment of error is sustained.
 {¶ 19} Our disposition of appellant's third assignment of error renders moot his first, second, fourth, fifth and seventh assignments of error. Accordingly, the same are overruled as moot.
 {¶ 20} In appellant's sixth assignment of error, he argues that his conviction is unsupported by sufficient evidence. This assignment of error is not rendered moot by our disposition of appellant's third assignment of error. State v. Lovejoy (1997),79 Ohio St.3d 440, 450, 683 N.E.2d 1112.
 {¶ 21} The Supreme Court of Ohio outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 22} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, supra, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356. The reviewing court does not substitute its judgment for that of the factfinder. Jenks,
supra, at 279.
 {¶ 23} In the present case, appellant's sufficiency challenge goes specifically to the identity of the perpetrator of the six robberies. He argues that the witness descriptions given to police are insufficient evidence of identity to support his conviction. He points out that two of the victims could not identify appellant as the perpetrator. He argues that their descriptions of the perpetrator's clothing and weapon are too general to prove beyond a reasonable doubt that appellant was the robber of those victims. He also points to physical descriptions offered by other victims that depicted an offender taller and much heavier than appellant, and points out that no victim had a clear view of the offender for a "significant length of time."
 {¶ 24} In response, the state argues the evidence did sufficiently point to appellant such that a rational trier of fact could have found that appellant participated in all six robberies. Specifically, the state points to the following pieces of evidence. Three victims positively identified appellant as the person who robbed them. Footprints in the snow led from the scene of the sixth and final robbery to appellant's apartment. Appellant was the only male in the apartment about one hour after that robbery. The victim of the sixth robbery identified appellant as the robber immediately, which identification occurred close in temporal proximity to the event itself. A gun matching the description of the weapon used in all six robberies was found in appellant's apartment. Also found in his apartment, stuffed under a mattress, was a wallet identified at trial by the victim of the fifth robbery as belonging to that victim.
 {¶ 25} The state also points out that the modus operandi used in the six robberies is strong evidence that they were all committed by the same person. In all six robberies, pizza delivery drivers were targeted, with all six orders having been made for delivery to the same apartment complex. The state also argues that it is significant that a new and different pizza shop was targeted each time. The state points out that only a robber who had participated in each previous robbery would know which pizza shops to target so as to be sure to catch each delivery person unaware that any of the previous robberies had taken place at the same location. This intentional change of targets, the state urges, provides evidence of the interconnectedness of the crimes such that evidence supporting the identity of the perpetrator of some of them is also evidence supporting the conclusion that the same person participated in the others. Finally, the state points out that appellant's own testimony implicating his brother also supports appellant's convictions because some victims testified that there were two robbers involved.
 {¶ 26} Upon our review of the evidence presented, and viewing the same in a light most favorable to the state, but without regard for or speculation about the credibility or weight the jury may have assigned to any of the evidence, we conclude that there was sufficient evidence presented to convince a rational trier of fact that appellant perpetrated all six of the robberies for which he was convicted. Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 27} For all of the foregoing reasons, appellant's first, second, fourth, fifth and seventh assignments of error are overruled as moot, his third assignment of error is sustained, and his sixth assignment of error is overruled on its merits. The judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Bryant and Brown, JJ., concur.