OPINION
{¶ 1} Felipe D. Vazquez was found guilty by a jury in the Montgomery County Court of Common Pleas of one count of rape, and he was sentenced to six years of imprisonment. He appeals from his conviction and sentence.
 {¶ 2} On June 11, 2004, Vazquez was indicted on two counts of rape by force or threat of force and on one count of gross sexual imposition. The case was tried to a jury in February 2005. The jury found Vazquez guilty on the first count of rape (vaginal penetration), not guilty on the second count (digital penetration), and not guilty of gross sexual imposition. He raises four assignments of error on appeal.
 {¶ 3} I. "APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 4} Vazquez claims that his conviction for rape was against the manifest weight of the evidence because his acquittal on two other charges showed "that [the victim] lacked credibility in the eyes of the jurors." He claims that the jury should have credited his version of events and acquitted him on all counts.
 {¶ 5} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 6} The state's evidence established the following facts.
 {¶ 7} Up on Main is a lesbian bar on North Main Street in Dayton. Vazquez and his friend, Juan Polito, arrived at the bar around 11:30 p.m. on May 15, 2004. A security guard tried to explain to the men that the club was for women, but communication was somewhat difficult because neither man was proficient at speaking English. The men indicated, however, that they just wanted to drink, and the club did not have a policy prohibiting men. According to the security guard and others who were present, the men "gawked" at the women who were present, looked at the women like "pieces of meat," and made some of the women uncomfortable.
 {¶ 8} The victim, a twenty-one year old woman, testified that she arrived at Up on Main between 12:30 and 12:45 a.m. on May 16, 2004. While she was there, Vazquez grabbed her arm, told her she was pretty, and gawked at her while she was dancing. The victim was able to communicate with Vazquez because she was fluent in Spanish, and she explained to him that she "liked girls." Nonetheless, his attention made her uncomfortable. Several state's witnesses testified that the victim had not flirted with or touched the men while at the bar and had refused to dance with Vazquez.
 {¶ 9} Vazquez and Polito left the bar before the victim did. The victim left when the bar closed, and she went to an all-night café a short distance away. In fact, several people who had been at Up on Main, including the owner, ended up at the Fat Cat Café. Chasity Sizemore testified that she had talked with Vazquez and Polito at Up on Main and had taken them to the café with her afterward. Sizemore sat with the victim and others at the Fat Cat Café, and Vazquez and Polito joined the group.
 {¶ 10} The men left the café before Sizemore or the victim. When Sizemore left, she walked alone back to her car at Up on Main and saw the men standing in front of the bar. When she was in her car, Vazquez approached her and offered to give her $50 to have sex with him. She cursed at him and left.
 {¶ 11} A short time later, the victim walked from the Fat Cat Café back to her car in the parking lot at Up on Main. She also saw the men near the parking lot, which made her nervous. After she got in her car, while she was trying to operate her new cellular phone, Vazquez approached the passenger window and knocked. The victim rolled down the passenger window and, at the same time, accidentally rolled down the driver's window as well. From the passenger window, Vazquez asked to come with the victim and started kissing her hand. She said no and pulled her hand away. Vazquez left the passenger window, and the victim thought he was gone, but he appeared at the driver's window. He bent through the window, pulled down her shirt, and started kissing her breast and neck. He then opened the door from the inside, put the driver's seat all the way back and the steering wheel up, and got in the car on top of the victim. The victim testified that he digitally penetrated her while her pants were on and then forced her to take one leg of her pants, one shoe, and one sock off. He then vaginally raped her while holding her up on the seat and biting her neck. During this time, the victim was trying to use her cellular phone to call for help, but the battery was too low. She was also telling Vazquez to stop. She did manage, however, to make a call to her girlfriend, Lori, by pressing "send" to dial the previous number called. During this call, Lori heard the victim say "rape" and "Up on Main" but could not make sense of what was happening.
 {¶ 12} According to the victim, after Vazquez got out of the car, she drove to her nearest friend's house. The friend called the police. She testified that the victim had been extremely upset. The police transported the victim to Miami Valley Hospital, where a rape kit was performed. The samples taken for the kit matched Vazquez's DNA.
 {¶ 13} After Chasity Sizemore heard about the rape, she reported to the police that she believed that Vazquez, known to her as Sebastian, lived in her neighborhood. She eventually led the police to a house on West Hudson where Vazquez lived, and he was arrested. The victim identified Vazquez from a photo array, and another woman also identified Vazquez as the man from Up on Main and the Fat Cat Café on the night of the attack. When he was questioned by the police, Vazquez initially denied ever having had sex with a white woman or with the victim in particular.
 {¶ 14} Vazquez presented a different version of events through his own testimony at trial. He claimed that he and the victim had gotten along well at the bar and the café, that they had commiserated because he had had a fight with his wife and she had had a fight with her girlfriend, and that they ended up having consensual sex in the front seat of her car. He claimed that he had lied to the police about the encounter because he did not want his wife to find out and that he had not fully understood the nature of the conduct of which they were accusing him.
 {¶ 15} The state presented substantial credible evidence in support of its case, and the jury could have reasonably credited the state's version of events. As such, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice in convicting Vazquez. Moreover, the fact that Vazquez was acquitted on other counts does not impugn his conviction. It is well established that each count of an indictment charges a complete offense and that the separate counts of an indictment are not interdependent. State v. Lovejoy (1997),79 Ohio St.3d 440, 446, 683 N.E.2d 1112. "[A]n inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." Id;State v. Brown (1984), 12 Ohio St.3d 147, 149, 465 N.E.2d 889. Because the separate counts in the indictment were not interdependent, Vazquez's conviction of one count of rape and acquittal of another count and of gross sexual imposition do not demonstrate, in themselves, that his conviction was against the manifest weight of the evidence.
 {¶ 16} The first assignment of error is overruled.
 {¶ 17} II. "APPELLANT WAS DENIED DUE PROCESS AND EQUAL PROTECTION THROUGH FAULTY INTERPRETATION OF PROCEEDINGS AGAINST HIM."
 {¶ 18} Vazquez claims that he was unfairly prejudiced by the court's refusal to allow his Spanish-speaking attorney to challenge the interpreter's translation of his testimony.
 {¶ 19} The exchange in question was as follows, with the prosecutor questioning Vazquez.
 {¶ 20} "Q. Chasity came to your home on June 2nd of 2004?
 {¶ 21} "A. Yes. Just that time. Not just that time, times before, eight, seven, or nine times.
 {¶ 22} "Q. Did you ever tell Chasity your name was Sebastian?
 {¶ 23} "A. No, I never — I never told her. I never tried —
 {¶ 24} "Q. Chasity's a liar?
 {¶ 25} "A. Really, yes, she is."
 {¶ 26} At this point, Vazquez's attorney, who speaks Spanish, asked to clarify the translation, stating that "[i]t makes a different sound totally opposite to what he was saying." The trial court refused to allow the "clarification," stating that the court would not interfere with the interpreter and that defense counsel could clarify the testimony on redirect. Counsel did not attempt to do so.
 {¶ 27} The trial court did not err in refusing to allow Vazquez's attorney to "clarify" the interpreter's translation of Vazquez's testimony. An interpreter is considered and must be sworn as any other witness, while an attorney must avoid becoming a witness in a case on which he is employed. See State v.Alvarez, 154 Ohio App.3d 526, 2003-Ohio-5094, 797 N.E.2d 1043; Ohio Disciplinary Rule 5-102. Moreover, counsel might have corrected the perceived misstatement on redirect examination if she felt that her client was prejudiced thereby. She did not attempt to do so. It is unclear whether the mistranslation related to the name Vazquez had allegedly used with the witness or to how many times the witness had been to Vazquez's house, but in our view neither of these points was critical to the case. The attorney's participation in the translation was not a reasonable manner in which to address the perceived error and, accordingly, the trial court did not err in refusing to allow it.
 {¶ 28} The second assignment of error is overruled.
 {¶ 29} III. "APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL THROUGH THE COURT'S PERMITTING THE VICTIM TO BE PRESENT IN HER VEHICLE AT THE TIME OF THE JURY VIEW AND THROUGH DEFENSE COUNSEL'S FAILURE TO OBJECT."
 {¶ 30} Vazquez contends that he was prejudiced by the victim's presence at the jury view and her demonstration of the various positions into which her car seat and steering wheel could be moved. He claims that this demonstration essentially allowed her to testify while not under oath and engendered undue sympathy for her. Vazquez acknowledges that his attorney did not object to this demonstration.
 {¶ 31} Although we can think of a number of ways in which the various positions of the car seat and steering wheel could have been demonstrated without the victim's involvement, we cannot say that the trial court erred in proceeding as it did in the absence of an objection from Vazquez.
 {¶ 32} Vazquez's argument invokes two legal standards which required him to show that the outcome of the trial would have been different but for the alleged error. First, by failing to object to the victim's participation in the jury view, Vazquez waived all but plain error, which does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been different. State v. Moreland (1990),50 Ohio St.3d 58, 62, 552 N.E.2d 894. Second, to establish that his attorney acted ineffectively in failing to object, Vazquez must demonstrate that trial counsel's errors, if any, were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. Even if we assume, for the sake of argument, that the victim should not have been permitted to participate in the jury view, Vazquez has failed to satisfy these standards.
 {¶ 33} During the jury view, the victim's car was positioned in the same location in the parking lot where the alleged rape occurred, and she sat in the car to demonstrate the various positions of the seat and steering wheel. The jurors were also shown the location of the bar and the café where Vazquez and the victim had interacted prior to the alleged offense and the location of the surveillance camera outside the bar from which they saw footage at trial. The victim did not have any direct interaction with the jurors, and there is no suggestion that she acted emotionally during the demonstration. Significantly, Vazquez stipulated to the fact that he had had sex with the victim in the front seat of her car, thereby conceding that it was physically possible to do so.
 {¶ 34} In light of Vazquez's stipulation that he had sex with the victim in the driver's seat of her car and her apparently unemotional behavior during the jury view, we must conclude that there is no reasonable probability that the outcome of the trial was affected by the victim's participation in the jury view. In other words, Vazquez failed to show any prejudice.
 {¶ 35} The third assignment of error is overruled.
 {¶ 36} IV. "APPELLANT'S SENTENCE WAS CONTRARY TO LAW."
 {¶ 37} Vazquez argues that his sentence was impermissible in light of the supreme court's recent holding in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 245 N.E.2d 470. The state concedes that Vazquez's argument has merit.
 {¶ 38} The Supreme Court of Ohio recently held that parts of Ohio's felony sentencing scheme are unconstitutional, including R.C. 2929.14(B), which required judicial factfinding before imposition of a non-minimum sentence. Id., following Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, and Apprendiv. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435. Because Foster held the statutes under which Vazquez's sentence was imposed to be unconstitutional and severed them from the sentencing provisions of the Revised Code, we must reverse his sentence and remand this case for a new sentencing hearing.Foster, at ¶ 104-105.
 {¶ 39} The fourth assignment of error is sustained.
 {¶ 40} The sentence will be reversed, and the matter will be remanded for resentencing in accordance with Foster. In all other respects, the judgment of the trial court will be affirmed.
Brogan, J. and Fain, J., concur.