[Cite as *State v. Hall*, 2013-Ohio-2900.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98615**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL HALL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-542140

**BEFORE:** E.T. Gallagher, J., S. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 3, 2013

**ATTORNEY FOR APPELLANT**

Brett M. Mancino
75 Public Square
Suite 1016
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    John R. Kosko
          Norman Schroth
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1}   Defendant-appellant Michael Hall ("Hall") appeals his aggravated robbery and kidnapping convictions.   We find no merit to the appeal and affirm.

{¶2} On March 14, 2008, John Mahone discovered the body of Eric Copley ("Copley") in front of his home located at 1075 East 76th Street in Cleveland. Mahone did not hear any gunshots or witness any crime, but his dog was barking at Copley's body, which was lying in the street at the edge of his property.   Cleveland police officer Charles Teel, who responded to the scene, recovered a bullet fragment in the area where Copley's body was found.

{¶3} EMS transported Copley to Huron Road Hospital, where he was pronounced dead on arrival.   The Cuyahoga County medical examiner ruled his death a homicide. Copley had been shot in the back, and the bullet penetrated through his liver and heart before exiting out of his chest.   According to the medical examiner, Copley would have been able to stand and walk for up to one minute after being shot.

{¶4} On the night of his death, Copley had been visiting Hall at Hall's residence on East 77th Street.   Mahone's house, where Copley's body was found, was located between Hall's house and Copley's house.   Copley was walking home from Hall's house when he was shot.   The next morning, Copley's mother, Josephine Copley ("Josephine"), found some of his belongings near the intersection of East 76th Street and Korman

Avenue. Josephine called the police, who recovered Copley's right tennis shoe, some CDs, his phone charger, and shell casings from the scene.

{¶5} There were no eyewitnesses to the shooting. However, Connie Anderson ("Anderson"), who lives at the corner of East 76th Street and Korman Avenue, told police that she was studying in her living room around 11:00 p.m. when she heard gunshots. She immediately turned off the lights, looked out the window, and saw a man wearing a hoodie looking down at something. She went upstairs to get a better view and saw another man kneeling on one knee. She watched the man stand up, take a few steps, and collapse face first in what she described as a "dead man's fall." The man in the hoodie ran toward East 77th Street.

{¶6} Four days after the shooting, on March 18, 2008, Hall and his mother, JoAnn Hall ("JoAnn"), contacted the police to report that they were being harassed by Copley's father, who suspected Hall of the murder. Hall and his mother voluntarily allowed homicide detectives to interview them about the crimes. They told detectives that Copley visited their house the night of his death, but Hall left the house hours before Copley went home and did not return until after Copley's death. Hall told detectives that he went with two family friends, Aniya Collins ("Collins") and Teinisha Paradise ("Paradise"), to buy juice for his mother and to visit his aunt, Sally Williams ("Aunt Sally"). After visiting Aunt Sally for over an hour, they left her house to search for someone selling marijuana on the streets. Collins and Paradise told police that while they were driving around, they saw Hall's friend Brandon Beckwith ("Beckwith") walking down the street. They

picked up Beckwith and dropped him off at his house with Hall. Hall told police he was still at Beckwith's house when his mother called and informed him that Copley had been killed. Hours after Hall's statement to the police on March 18, 2008, Beckwith turned himself in to the police.

{¶7} At trial, Josephine Copley testified that she and Copley worked together for a cleaning service and cleaned the KeyBank Center on East Ninth Street in downtown Cleveland. They were paid every Thursday, and Josephine always cashed Copley's check and gave him the cash. The day before his death, she had given Copley $316, which he kept in his pocket. Investigators did not recover any cash from his pockets after his death.

{¶8} No charges were filed against Hall until October 2010. In August 2010, Robert Dillard ("Dillard") contacted the police and informed them that he had information concerning Copley's murder. Dillard, who lived upstairs from Aunt Sally's apartment and dated Hall's cousin, provided a recorded statement to the police in which he described Hall's conspiracy with Beckwith to rob Copley of his cash and split the money. According to this August 2010 statement, Hall told Beckwith that Copley had a lot of money in his pocket and suggested that Beckwith follow him around, corner him, and rob him. As planned, Beckwith followed Copley out of Hall's house and robbed him. Hall explained to Dillard that "he was supposed to have taken the money but, don't know if he got the money or not, but he shot that boy." Hall also told Dillard that he was

riding in Collins's car when they saw Beckwith walking down the street and picked him up. At Beckwith's house, Beckwith told Hall that he shot Copley.

{¶9} In December 2010, Dillard signed an affidavit at Hall's attorney's office recanting his August 2010 statement. At trial, he testified that every detail contained in his August 2010 statement "was a lie," including the facts that (1) Beckwith was alone at the time of the robbery, (2) Copley had a lot of money in his pocket because he had a job, and (3) Hall was driving around with Collins when they picked up Beckwith and went to Beckwith's house where Beckwith informed Hall of the shooting. At the time Dillard gave his August 2010 statement, he was in jail for domestic violence against Hall's cousin, Tiffany Williams ("Williams"). He testified that he fabricated the entire story contained in his August 2010 statement because he wanted to hurt Williams and her family.

{¶10} After the police received Dillard's August 2010 statement, Hall was charged with two counts of aggravated murder, two counts of aggravated robbery, and two counts of kidnapping. All counts included one- and three-year firearm specifications. He was charged along with codefendants Brandon Beckwith and Sharvaise Robinson ("Robinson") for the shooting death of Eric Copley. According to Dillard's statement, Robinson helped set up the robbery by inviting Copley over to Hall's house the night of his death.

{¶11} The case proceeded to a jury trial in April 2011, and the jury found Hall not guilty of the two counts of aggravated murder, one count of aggravated robbery, and one

count of kidnapping.   The jury was hung on the remaining counts of aggravated robbery and kidnapping.   Following a second trial, the jury found Hall guilty of aggravated robbery and kidnapping, with three-year firearm specifications.   The court merged the two convictions and sentenced Hall to seven years for aggravated robbery and three years for the firearm specifications, to be served consecutively, for an aggregate ten-year prison sentence.   Hall now appeals and raises seven assignments of error.

**Double Jeopardy**

{¶12} In his first assignment of error, Hall argues double jeopardy barred the state from prosecuting him for aggravated robbery and kidnapping in the second trial because he was previously acquitted of aggravated murder and separate counts of aggravated robbery and kidnapping.

{¶13} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states: "No person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb * * *."   The Fifth Amendment was made applicable to the states through the Fourteenth Amendment.   Section 10, Article I, of the Ohio Constitution states: "No person shall be twice put in jeopardy for the same offense."   The Double Jeopardy Clause protects persons from (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense."   *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

{¶14} Hall argues that double jeopardy barred the second trial, even though the jury was hung on the remaining two counts of aggravated robbery and kidnapping. He contends that *State v. Liberatore*, 4 Ohio St.3d 13, 445 N.E.2d 1116 (1983), supports his double jeopardy argument.

{¶15} In *Liberatore*, the victim was killed in his car by a bomb, which was placed in an adjacent car and detonated by remote control. Liberatore was charged with aggravated murder "as purposely causing the death of another, * * * during the commission of aggravated arson." In other words, the defendant was charged with aggravated arson and aggravated murder with aggravated arson as the predicate felony. The jury acquitted Liberatore of aggravated arson and hung on the aggravated murder charge. The Ohio Supreme Court found that because aggravated arson was the predicate crime for the aggravated murder charge, a judgment of acquittal on aggravated arson foreclosed retrial of the defendant on aggravated murder. *Id.* at 15.

{¶16} In *State v. Lovejoy*, 79 Ohio St.3d 440, 1997-Ohio-371, 683 N.E.2d 1112, the Ohio Supreme Court distinguished *Liberatore* and held that when a jury finds a defendant not guilty as to some counts and is hung on other counts, double jeopardy does not apply where the inconsistency arises out of inconsistent responses to different counts, not out of inconsistent responses to the same count. *Id.* at paragraph two of the syllabus. It explained that because Liberatore was acquitted of the predicate offense of aggravated arson, the hung verdict on the related felony murder count was an inconsistency within the same count, and therefore barred by double jeopardy.

{¶17} In this case, Hall was charged with two counts of aggravated murder, two counts of aggravated robbery, and two counts of kidnapping. The jury in the first trial acquitted him of both aggravated murder counts, the aggravated robbery charge in violation of R.C. 2911.01(A)(1) (brandishing a weapon), and the kidnapping charge in violation of R.C. 2905.01(A)(3) (for the purpose of terrorizing or inflicting serious harm). The jury was hung on the remaining counts of aggravated robbery in violation of R.C. 2911.01(A)(3) (did inflict serious harm) and kidnapping in violation of R.C. 2905.01(A)(2) (for the purpose of committing a felony, i.e, aggravated robbery). The remaining aggravated robbery and kidnapping charges were predicate offenses. Because Hall was not acquitted of the predicate offenses, there are no inconsistencies in the jury's verdict. Therefore, double jeopardy did not prevent the retrial of Hall on the aggravated robbery and kidnapping counts.

{¶18} The first assignment of error is overruled.

**Accomplice Instruction**

{¶19} In his second assignment of error, Hall argues the trial court committed plain error and denied him due process when it failed to give a mandatory accomplice instruction, in violation of R.C. 2923.03(D), as to Sharvaise Robinson's testimony.

{¶20} Hall's trial counsel failed to request a jury charge on accomplice testimony, as required by Crim.R. 30(A). Therefore, he waived all but plain error. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error

under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. *Id.* at paragraph two of the syllabus.

{¶21} When a defendant is charged with complicity and his accomplice testifies, R.C. 2923.03(D) requires the court to give the following jury instruction:

> The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
>
> It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

{¶22} The purpose of this statutorily-mandated jury instruction is to ensure that the jury is informed that the testimony of an accomplice is inherently suspect and must be "viewed with suspicion and weighed with caution." *State v. Bell*, 8th Dist. No. 97123, 2012-Ohio-2624, ¶ 37.

{¶23} In determining whether the trial court committed plain error by failing to provide an accomplice instruction, a reviewing court considers three factors: (1) whether other evidence at trial corroborated the alleged accomplice's testimony; (2) whether the jury was aware from the alleged accomplice's testimony that he benefitted from agreeing to testify against the defendant; and/or (3) whether the court instructed the jury generally, regarding its duty to evaluate the credibility of the witnesses and its province to determine

what testimony is worthy of belief. *State v. Kamleh*, 8th Dist. No. 97092, 2012-Ohio-2061, ¶ 38.

**{¶24}** Robinson was originally charged, along with Hall and Beckwith, with aggravated murder, aggravated robbery, and kidnapping. She and Hall were both charged as Beckwith's accomplices. At trial, Robinson testified that she is Hall's niece and was living with the Hall family when Copley died. She testified that she knew Copley carried a lot of money because he often flashed his money. She also stated that she was not home the night Copley was killed because she was visiting a friend who lived nearby. Shortly after returning home and going to bed at approximately 1:00 a.m, she received a phone call from another friend who informed her that Copley was dead. Robinson testified that when Hall returned home later that night, he told her that Beckwith robbed and killed Copley and they split the money.

**{¶25}** Although Robinson's testimony was prejudicial, it was corroborated by other witnesses. Several witnesses acknowledged that Copley often flashed his money since he started his job several months before his death. JoAnn Hall testified that Beckwith, Copley, and Hall were together in Hall's room during the early evening hours. Collins and Paradise both testified that they picked up Beckwith later that night and dropped off Hall and Beckwith at Beckwith's house after Beckwith would have already committed the murder. Dillard's August 2010 recorded statement corroborates Robinson's testimony that Hall and Beckwith planned to rob Copley and that Beckwith shot Copley during the robbery. Although Dillard later recanted this statement, the

timeline and other details in his statement were corroborated by several other witnesses. The testimony of these witnesses, considered together with Dillard's August 2010 statement, corroborates Robinson's trial testimony.

{¶26} Robinson also described the details of her plea agreement. She admitted that, in exchange for her testimony at Hall's trial, her charges were reduced to a single count of obstructing justice, a third-degree felony. She also admitted that she had not yet been sentenced and that her sentencing hearing was postponed until after Hall's trial. Therefore, the jury was aware that she was an accomplice, that she benefitted from her testimony, and therefore that her testimony was inherently suspect.

{¶27} Finally, the court instructed the jury that it was the sole judge of the weight and credibility of the evidence. In its charge, the court stated that in assessing a witness's credibility, the jury must consider the reasonableness of the testimony, the accuracy of the witness's memory, the witness's frankness or lack of it, the witness's intelligence, and his or her interest or bias, if any, together with all the facts and circumstances surrounding the testimony. Thus, the court properly instructed the jury regarding its duty to evaluate the credibility of the witnesses and to determine what testimony was worthy of belief.

{¶28} Although Robinson's testimony was unfavorable to Hall, the evidence of Hall's involvement in the aggravated robbery of Eric Copley did not rest solely on the accomplice's testimony. Furthermore, because the jury was aware of Robinson's plea agreement and was instructed on its duty to determine the credibility of witnesses, we find

that any error by the court in failing to give an accomplice instruction did not rise to the level of plain error.

**{¶29}** The second assignment of error is overruled.

### Dillard's Prior Unsworn Statements

**{¶30}** In the third assignment of error, Hall argues he was denied due process of law when the trial court allowed the state to introduce evidence of Dillard's prior unsworn statements. He contends that although Dillard was called as a court's witness, Dillard's August 2010 statement was inadmissible because it was not made under oath and there was no evidence of surprise and affirmative damage to the state's case before the statement was introduced.

**{¶31}** Evid.R. 614(A) provides that "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." Evid.R. 614 authorizes the court to call a witness as a court's witness if the party who would have called the witness demonstrates that the witness is likely to recant a prior statement favorable to that party. *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218, ¶ 43 (2d Dist.), citing *State v. Kiser*, 6th Dist. No. S-03-028, 2005-Ohio-2491. The purpose of calling a witness as a court's witness is to allow for a proper determination in a case where a witness is reluctant or unwilling to testify. *State v. Curry*, 8th Dist. No. 89075, 2007-Ohio-5721, ¶ 18.

**{¶32}** When the court calls a witness on its own motion, a party need not satisfy the surprise and affirmative damage requirements of Evid.R. 607(A) in order to impeach

the witness. *State v. Apanovitch*, 33 Ohio St.3d 19, 22, 514 N.E.2d 394 (1987). By authorizing the court to call a witness who may then be cross-examined by any party, Evid.R. 614 creates an exception to the limitation imposed by Evid.R. 607(A), which requires a showing of surprise or affirmative damage before a party may impeach its own witness.

{¶33} Further, "a trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court." *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980), paragraph four of the syllabus. A trial court does not abuse its discretion in calling a witness as a court's witness "'when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement[.]'" *Arnold* at ¶ 44, quoting *State v. Schultz*, 11th Dist. No. 2003-L-156, 2005-Ohio-345, ¶ 29.

{¶34} Prior to Hall's first trial, the trial court issued a material witness arrest warrant for Dillard. For seven weeks, Dillard avoided capture, but eventually turned himself in. At the first trial, Dillard, testifying as a court's witness, testified that his original August 2010 statement was true except for the part that Hall planned the robbery. In the second trial, Dillard testified that the entire August 2010 statement was a lie. The record demonstrates that Dillard made several prior inconsistent statements. He was apparently reluctant to testify. And because it was impossible to predict how Dillard would testify at the second trial, the trial court was well within its discretion to call

Dillard as the court's witness.  As such, the state was free to cross-examine him without establishing the surprise and affirmative damage requirements of Evid.R. 607(A).

{¶35} The third assignment of error is overruled.

### Sufficiency and Weight of the Evidence

{¶36} In the fourth assignment of error, Hall argues his aggravated robbery and kidnapping convictions were not supported by sufficient evidence. In the fifth assignment of error, Hall argues that his convictions were against the manifest weight of the evidence.  However, in the fifth assignment of error, he relies on the same arguments raised in the fourth assignment of error with respect to sufficiency of the evidence.   Thus, although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we will address these issues together, while ensuring that we apply the distinct standards of review to Hall's arguments.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶37} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial.  *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 942 (1991), paragraph two of the syllabus.

{¶38} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence."  *Thompkins* at 387.  While "sufficiency of the

evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶39} Hall argues there was insufficient evidence to support his convictions and that Robinson's testimony was not credible because Robinson contradicted herself when she first stated that Hall and Beckwith split Copley's money, then later stated that Hall threw the money in Beckwith's face. Hall also contends that there was no evidence linking him to Copley's murder or showing how he aided and abetted Beckwith in the crimes. Finally, he asserts that Collins and Paradise provided an alibi defense. We find Hall's arguments unsupported by the record.

{¶40} In this case, Hall was convicted of aggravated robbery and kidnapping with firearm specifications under a complicity theory. He was convicted of R.C. 2911.01(A)(3), which states that "[n]o person, in attempting or committing a theft offense, * * * or in fleeing immediately after the * * * offense, shall * * * [i]nflict, or

attempt to inflict, serious physical harm on another." He was also convicted of kidnapping in violation of R.C. 2905.01(A)(2), which states that "[n]o person, by force, threat, or deception * * * shall * * * restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter[.]"

{¶41} Ohio's complicity statute, R.C. 2923.03, provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). To prove complicity by aiding and abetting under R.C. 2923.03(A)(2), the evidence must show that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus. Such intent may be inferred from the circumstances surrounding the crime. *Id.*

{¶42} Although there was no direct evidence linking Hall to the crimes, circumstantial evidence proved his involvement as an accomplice. Circumstantial evidence alone is sufficient to support a conviction. *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988), paragraph one of the syllabus. Circumstantial evidence and direct evidence inherently possess the same probative value, and therefore should be subjected to the same standard of proof. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 942 (1991), at paragraph one of the syllabus. "[A] conviction based upon purely

circumstantial evidence may be just as reliable as a conviction based upon direct evidence, if not more so." *Apanovitch*, 33 Ohio St.3d at 27, 514 N.E.2d 394 (1987).

{¶43} It is undisputed that Copley was at Hall's house for several hours before he was shot on his way home. It was well known that Copley carried large amounts of cash because he was paid on a weekly basis and often flashed his money, which he kept in his pocket. His mother testified that she cashed his paycheck as usual and gave him the money the day before his death. However, investigators did not find any money in his pockets after his death.

{¶44} Although Hall was with Collins and Paradise when Copley was shot, Dillard told the police that Hall admitted that he told Beckwith to rob Copley and they would split the money. Anderson testified that she saw a hooded man run toward East 77th Street after the shooting, which is consistent with the direction Collins, Paradise, and Hall later observed Beckwith walking. By the time they picked up Beckwith, it was late enough that the robbery and murder had already occurred. Collins and Paradise dropped off Hall and Beckwith at Beckwith's house. According to Dillard, Beckwith told Hall that he shot Copley and Hall was angry because murder was not part of their plan.

{¶45} This evidence was corroborated by additional evidence. Hall and JoAnn told police that Copley was at their house prior to his death, that Hall left the house with Collins and Paradise, and that Hall did not return home until after Copley's death. Robinson testified that when Hall returned home around 1:00 a.m., he told her that

Beckwith had killed Copley and offered to split the money. Hall warned Robinson not to tell anyone because Beckwith threatened him with a gun.

{¶46} Further, Copley was friends with Hall and Robinson, but hardly knew Beckwith. Beckwith left Hall's house shortly before Copley went home. Beckwith would not have known where Copley lived and the route he walked home unless someone had told him. Copley was shot somewhere between Hall's house and home.

{¶47} The evidence indicates that Beckwith seriously injured Copley while committing a theft offense. Viewing the evidence in a light most favorable to the state, we find that the circumstantial evidence is sufficient to prove that Hall incited and encouraged Beckwith to rob Copley and that he shared the same criminal intent as Beckwith. Having considered all the evidence, the reasonable inferences, and the credibility of the witnesses, we find that Hall's convictions are supported by the weight of the evidence. Therefore, Hall's aggravated robbery and kidnapping convictions are supported by sufficient evidence and are not against the weight of the evidence.

{¶48} The fourth and fifth assignments of error are overruled.

### Firearm Specifications

{¶49} In the sixth assignment of error, Hall argues that there was insufficient evidence to convict him of the firearm specifications. He contends there was no evidence linking him to any firearm.

{¶50} Liability as an accomplice to aggravated robbery does not require that the accomplice have specific prior knowledge that the principal will employ a weapon, i.e.,

inflict serious, physical harm on the victim while committing the theft offense. R.C. 2911.01(A)(3). As an accomplice, appellant is deemed to have committed every element of the offense committed by the principal, including possession of the weapon. *State v. Chapman*, 21 Ohio St.3d 41, 487 N.E.2d 566 (1986). In *Chapman*, the Ohio Supreme Court upheld an accomplice's convictions for aggravated robbery and the accompanying firearm specifications, despite his contention that there was no evidence he was aware that a weapon would be used. Advance knowledge that a weapon will be used is not required for accomplice liability. *Chapman* at 42-43.

**{¶51}** Therefore, despite the lack of any direct evidence establishing that Hall was in possession of a firearm, he was properly convicted of the firearm specifications as an accomplice to the crimes.

**{¶52}** The sixth assignment of error is overruled.

**Ineffective Assistance of Counsel**

**{¶53}** In the seventh assignment of error, Hall argues he was denied his constitutional right to the effective assistance of counsel because his trial counsel failed to cross-examine Sharvaise Robinson as to her motivation and bias to lie. He contends that because Robinson was the state's primary witness, his counsel's failure to establish her bias prejudiced his trial.

**{¶54}** To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. *Strickland v. Washington*, 466 U.S.

668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. A defendant must show that counsel acted unreasonably and that, but for counsel's errors, there exists a reasonable probability that the result of the proceeding would have been different. *Strickland* at 696; *Bradley* at paragraph three of the syllabus. In making this determination, the reviewing court must presume that counsel's conduct was competent. *Id.*

{¶55} Robinson testified as an accomplice. As previously explained, Robinson's testimony was corroborated by several other witnesses. She admitted that she entered a plea agreement with the state whereby the murder, aggravated robbery, and kidnapping charges against her were reduced to a single count of obstructing justice in exchange for her testimony against Hall. She testified that her sentencing hearing was postponed until after Hall's trial. Thus, the jury was aware that she benefitted from her testimony and that her testimony was inherently suspect. Cross-examination of these issues, which were already established on direct examination, would have been redundant and would not have added any new information.

{¶56} Furthermore, this court must presume that a licensed attorney is competent and that the challenged action is the product of sound trial strategy. *Strickland* at 689. Robinson's testimony on cross-examination informed the jury that Hall was distressed when he learned that Copley had been killed. Counsel's decision not to cross-examine Robinson on her bias was likely the product of trial strategy.

**{¶57}** Therefore, trial counsel's decision not to cross-examine Robinson on her plea agreement and apparent bias did not affect the outcome of the trial and was not ineffective assistance.

**{¶58}** Accordingly, the seventh assignment of error is overruled.

**{¶59}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR