[Cite as *State v. Trammel*, 2013-Ohio-4354.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
|     Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2012 CA 00237 |
| YUSEF TRAMMEL | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
Pleas, Case No. 2012 CR 01221


JUDGMENT:                      Affirmed


DATE OF JUDGMENT ENTRY:        September 30, 2013


APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
KATHLEEN O. TATARSKY
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

For Defendant-Appellant

KRISTINE W. BEARD
4450 Belden Village Street, NW
Suite 703
Canton, Ohio  44718

*Wise, J.*

{¶1}   Appellant Yusef Trammel appeals his convictions and sentence, in the Court of Common Pleas, Stark County, on one count of aggravated burglary, with a repeat violent offender specification. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}   Shortly after midnight on August 6, 2012, Darin Hutchinson returned to his home on Tremont Avenue in Massillon, Ohio, having finished his evening shift at a nearby bakery. That night, Darin's son Brad, age nineteen, was resting upstairs in his room, while Darin's wife Rebecca Hutchinson was staying late at her mother's house to help take care of her following a recent surgery. Darin fell asleep on the couch, but was awakened at about 3:30 am when he heard some banging on the front door. Thinking Rebecca was knocking, he went to open the door. As he approached the entrance area, the door was smashed open, striking him in the head. Appellant, a former boyfriend of Rebecca's, immediately came crashing into the interior of the house and jumped on top of Darin. Putting Darin in a choke hold and banging his head onto the floor, appellant threatened to kill him.

{¶3}   Rebecca, who had come home earlier while Darin was sleeping, saw appellant attack Darin. She yelled for Brad to come downstairs to assist and she tried to call 911. Appellant knocked the cell phone out of her hand, but she managed to retrieve it and call for help. Brad meanwhile came down the steps and got hold of appellant, who was still choking and punching Darin. Darin later testified that he thought Brad "saved my life that night." Tr. at 138. The father and son together were able to restrain appellant until Massillon Police Officer Tim Anderson arrived, although appellant bit

Darin in the arm during the fracas. Darin also apparently suffered a seizure due to the stress of the assault. Appellant was thereupon arrested and handcuffed by Officer Anderson.

{¶4} Appellant was thereafter bound over from the Massillon Municipal Court. On September 10, 2012, the Stark County Grand Jury indicted appellant on one count of aggravated burglary, R.C. 2911.11(A)(1), a first-degree felony, and one count of harassment with a bodily substance, R.C. 2921.38(B), a felony of the fifth degree. The aggravated burglary charge carried a repeat violent offender specification under R.C. 2929.01(CC) and 2941.149.

{¶5} Appellant entered pleas of not guilty, and the case was ultimately set for trial. On November 9, 2012, prior to commencement of the trial, appellant filed a motion requesting that the trial court decide the repeat violent offender ("RVO") specification. Said motion was granted, and the court later found appellant guilty of the RVO based on a prior felony burglary.

{¶6} The jury trial began on November 13, 2012. After the presentation of all of the testimony, appellant requested a jury instruction on assault, which the trial court denied. The jury subsequently returned with a verdict of guilty to the crime of aggravated burglary but not guilty to the crime of harassment with a bodily substance.

{¶7} The trial court ultimately sentenced appellant to ten years on the aggravated burglary conviction and no time on the RVO specification.

{¶8} On December 19, 2012, appellant filed a notice of appeal. He herein raises the following four Assignments of Error:

{¶9} "I. APPELLANT'S CONVICTION FOR AGGRAVATED BURGLARY IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GIVE THE JURY AN INSTRUCTION ON THE OFFENSE OF ASSAULT.

{¶11} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED IT (SIC) DISCRETION BY IMPOSING A NON-MINIMUM, MAXIMUM SENTENCE.

{¶12} "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE APPELLANT'S REQUEST TO CALL REBECCA HUTCHINSON AS ON CROSS AS A COURT'S WITNESS."

I.

{¶13} In his First Assignment of Error, appellant contends his conviction for aggravated burglary was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

{¶14} In reviewing a claim based on the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶15} Appellant in the case sub judice was convicted of aggravated burglary under 2911.11(A)(1), which states that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure *** any criminal offense, if *** [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."

**{¶16}** "Force" is defined by R.C. 2901.01(A) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Physical harm to a person means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." *See* R.C. 2901.01(A)(3).

**{¶17}** At the trial in the case sub judice, the State presented testimonial evidence that appellant had kicked in or crashed his body into the door of the Hutchinson home, taking it off its hinges and breaking the door frame. According to Darin, the door's casing was "actually off the wall." Tr. at 137. Upon review of the record, as summarized in our statement of the facts, *supra*, in a light most favorable to the prosecution, we hold appellant's conviction for aggravated burglary was supported by sufficient evidence of his forcible entry and physical assault on Darin inside the home.

**{¶18}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶19}** Appellant's manifest weight argument concerning the jury's verdict of aggravated burglary largely focuses on the issue of appellant's status as a trespasser in

the Hutchinson home on the night in question. In Ohio, "[p]rivilege is the distinguishing characteristic between unlawful trespass and lawful presence on the land or premises of another." *State v. Roland*, 12th Dist. Butler No. CA2012–05–104, 2013-Ohio-1382, ¶17, citing *State v. Russ,* 12th Dist. Clermont No. CA99–07–074, 2000 WL 864989. However, where a defendant commits an offense against a person in the person's private dwelling, the defendant forfeits any privilege, becomes a trespasser, and can be culpable for aggravated burglary. *See State v. Cutts,* 5th Dist. Stark No. 2008CA000079, 2009-Ohio-3563, ¶ 181, citing *State v. Steffen,* 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987).

**{¶20}** There were three witnesses for the prosecution at trial: Darin Hutchinson, Bradley Hutchinson, and Massillon Police Officer Tim Anderson. In the defense phase, Rebecca Hutchinson was the sole witness. Darin testified that when he went to rest on the couch on the night of August 6th, Rebecca had not yet returned home from her mother's house; furthermore, the door was locked, but Rebecca did not have a key. However, Rebecca recalled that upon her arrival back home, the door was unlocked and she let herself in. *See* Tr. at 135-136, 155, 248.

**{¶21}** Appellant emphasizes certain discrepancies in the testimony going to the crucial issue of whether appellant trespassed by force into the Hutchinson's home. For example, Darin testified that appellant was not permitted in the home. Tr. at 133. However, Rebecca and Brad Hutchinson testified that they had given appellant permission to be a guest at the home and that appellant had been at the residence several times per week for a few months prior to the altercation. Tr. at 193, 241.

Furthermore, Rebecca testified that appellant was physically in the home earlier on the evening of the altercation. *See* Tr. at 243, 244.

**{¶22}** Likewise, in regard to the damage done to the door of the home, Officer Anderson testified that he did not notice the condition of said door that night. Tr. at 206-207. Brad, who had been upstairs sleeping, testified that he did not hear any banging or crashing that night in regard to the door, but he did see the casing was broken after appellant was arrested. Tr. at 188, 195. Darin testified that the door had been fixed the next day, i.e., August 7, 2012. Tr. at 176. However, as appellant notes, one of the front door repair receipts was dated September 4, 2012, almost a month later. *See* Tr. at 176-177.

**{¶23}** Appellant thus argues that the jury should have inferred that appellant was invited in by Rebecca on the night in question, and that when Darin woke up, he and appellant got into an altercation. However, even if the jurors had so concluded and thereby rejected a forced entry theory of the case, they could have reasonably determined that the consent to enter was revoked and trespass was established when appellant physically attacked Darin in his home, as per the law set forth in *Cutts, supra*.

**{¶24}** We are thus unpersuaded that the jury lost its way in assessing the evidence in this case. Upon review, we find the jury's decision did not create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.

**{¶25}** Appellant's First Assignment of Error is overruled.

II.

**{¶26}** In his Second Assignment of Error, appellant contends the trial court abused its discretion in denying his request for an instruction to the jury on the offense of misdemeanor assault**.** We disagree.

**{¶27}** A party is not entitled to an instruction on a lesser included offense unless the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *See State v. Anderson,* Butler App. No. CA 2005–06–156, 2006–Ohio–2714, ¶ 10. In making this determination, the court must view the evidence in the light most favorable to the defendant. *Id.* But an instruction on a lesser included offense is not warranted every time "some evidence" is presented to support the inferior offense. *See State v. Shane* (1992), 63 Ohio St.3d 630, 633, 590 N.E.2d 272.

**{¶28}** However, it is incumbent that we first determine whether assault is a lesser included offense of aggravated burglary. An offense may be a lesser included offense of another if: 1) the offense carries a lesser penalty; 2) the greater offense, as statutorily defined, cannot be committed without also committing the lesser offense; and 3) some element of the greater offense is not required to prove the commission of the lesser offense. *See State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294; *State v. Evans,* 122 Ohio St.3d 381, 2009-Ohio-2974.

**{¶29}** Aggravated burglary is set forth under 2911.11(A)(1) as follows: "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to

commit in the structure *** any criminal offense, if *** [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."

**{¶30}** In contrast, assault is set forth in pertinent part under R.C. 2903.13(A) as follows: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

**{¶31}** Under Ohio law, "[a]ssault is an offense against another's person while aggravated burglary is an offense against property. *** Aggravated burglary requires an unpermitted entry into an occupied structure, which assault does not. Thus, the essence of an aggravated burglary charge is the trespass with the intent to commit a criminal offense." *State v. Byrd*, 12th Dist. Warren Nos. Nos. CA98-05-058, CA98-06-065, 1999 WL 188091 (citations omitted). In the case sub judice, we find that aggravated burglary, as statutorily defined, clearly can be committed without the commission of an assault offense. As such, we find assault is not a lesser-included offense of aggravated burglary, and we therefore need not further analyze the issue of the requested jury instruction. The trial court's decision in this regard was not an abuse of discretion.

**{¶32}** Accordingly, appellant's Second Assignment of Error is overruled.

III.

**{¶33}** In his Third Assignment of Error, appellant argues the trial court erred in sentencing him to a non-minimum, maximum prison term. We disagree.

**{¶34}** In *State v. Kalish,* 120 Ohio St.3d 23, 896 N.E.2d 124, 2008–Ohio–4912, a plurality opinion, the Ohio Supreme Court established a two-step procedure for reviewing a felony sentence. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine

whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this first step is satisfied, the second step requires the trial court's decision be reviewed under an abuse-of-discretion standard. *Id.* We have recognized that "[w]here the record lacks sufficient data to justify the sentence, the court may well abuse its discretion by imposing that sentence without a suitable explanation." *State v. Firouzmandi,* Licking App.No. 2006–CA–41, 2006–Ohio–5823, ¶ 52.

**{¶35}** Subsequent to the Ohio Supreme Court's *Foster* decision, "[t]he decision to impose the maximum sentence is simply part of the trial court's overall discretion in issuing a felony sentence and is no longer tied to mandatory fact-finding provisions." *State v. Parsons,* Belmont App.No. 12 BE 11, 2013–Ohio–1281, ¶ 14. "[T]rial courts have the full discretion to impose a prison sentence within the statutory range and judicial fact finding is no longer required before a court imposes non-minimum, maximum or consecutive prison terms." *State v. Dowdell*, Licking App.No. 2009CA00020, 2010-Ohio-998, ¶ 12 (additional citations omitted).[1]

**{¶36}** In the case sub judice, the sentence at issue is within the statutory range for first-degree felonies. *See* R.C. 2929.14(A)(1). Indeed, because the high end of the range for first-degree felonies is now eleven years, the ten-year sentence appellant received is actually less than the maximum. The court stated in its judgment entry that it had considered the record, oral statements, any victim impact statements and pre-sentence reports, as well as the principles and purposes of sentencing under R.C. 2929.11 and had balanced the seriousness and recidivism factors of R.C. 2929.13 [sic]. We further note that appellant has a long criminal record, including convictions for prior

---

[1]    We note that *Dowdell* pre-dates H.B. 86, which has revived certain fact-finding requirements regarding consecutive sentences.

burglary, assault, receiving stolen property, weapons under disability and carrying a concealed weapon, resulting in various stints in prison. *See* Tr. II at 29-30. The trial court also noted its concern about the type of injuries inflicted on Darin by appellant's attack. *See* Tr. II at 33.

**{¶37}** Accordingly, we hold the non-minimum, ten-year sentence in this matter was not based on the consideration of improper factors and is not unreasonable, arbitrary or unconscionable.

**{¶38}** Appellant's Third Assignment of Error is overruled.

IV.

**{¶39}** In his Fourth Assignment of Error, appellant maintains the trial court abused its discretion in denying his request to call Rebecca Hutchinson, the victim's wife, as a court's witness. We disagree.

**{¶40}** Evid.R. 614(A) provides that the court may on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine such witnesses. The decision as to whether to call a witness pursuant to Evid.R. 614(A) is within the discretion of the trial court, and will be reversed only for an abuse of such discretion. *State vs. Forehope* (1991), 71 Ohio App.3d 435, 441, 594 N.E.2d 83. " *** Evid.R. 614 creates an exception to the limitation imposed by Evid.R. 607(A), which requires a showing of surprise or affirmative damage before a party may impeach its own witness." *State v. Hall*, 8th Dist. Cuyahoga No. 98615, 2013-Ohio-2900, ¶ 32.

**{¶41}** In the case sub judice, Rebecca Hutchinson was not called as a witness by the State. Evidence adduced at trial indicated that although Rebecca is Darin's wife, she has over the years stayed in contact with appellant, with whom she had a child

more than twenty years ago. At the beginning of the defense case, appellant's trial counsel asked the court to allow him to call Rebecca as a court's witness, urging that Rebecca was hostile to the defense. *See* Tr. at 233. The trial court overruled the request at that time, pending the presentation of some testimony by Rebecca as a defense witness. Rebecca went on to testify, inter alia, that she had exchanged numerous cell phone texts with appellant, even messages suggesting they had started to renew a romantic relationship. However, she did ultimately maintain that appellant had no permission to enter the Hutchinson home at 3:30 am and that she was the person who made the 911 call that night. Appellant presently contends that Rebecca was a "hard witness to control," and that she "successfully eluded any examination as to her credibility and her relationship with the appellant on the night of the incident." Appellant's Brief at 17.

{¶42} Upon the presentation of some of Rebecca's testimony, the following exchange took place before the bench:

{¶43} "THE COURT: You've got to remember this is your witness at this point in time. I know you requested it up front, but I haven't heard anything at this point in time that would indicate that she's a hostile witness.

{¶44} [DEFENSE COUNSEL] MR. WILL: Well, Your Honor, I was trying not to be leading, but I was also trying to make sure she doesn't say anything else.

{¶45} "THE COURT: You're trying to impeach your own witness and asking her questions with regard to being untruthful. That's totally inappropriate, doesn't happen in my courtroom.

{¶46} "MR. WILL: I apologize, Your Honor. I would renew my request to consider her a Court's witness.

{¶47} "THE COURT: Overruled, unless I hear something more that indicates that she's hostile to your client or to your position, but as it stands right now, you're asking her questions, you've been given more latitude than typical in terms of questioning her, but at this point in time I don't consider her to be a hostile witness to your position.

{¶48} "MR. WILL: Thanks, Your Honor."

{¶49} Tr. at 253-254.

{¶50} Upon review of the entire transcript, we are unable to conclude the trial court abused its discretion in its above holding and in declining to treat Rebecca as a court's witness.

{¶51} Appellant's Fourth Assignment of Error is therefore overruled.

{¶52} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.

/s/ John W. Wise_____
HON. JOHN W. WISE

/s/ W. Scott Gwin_____
HON. W. SCOTT GWIN

/s/ Craig R. Baldwin_____
HON. CRAIG R. BALDWIN

JWW/d 0912

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                              :
                                          :
    Plaintiff-Appellee                :
                                          :
-vs-                                      :                JUDGMENT ENTRY
                                          :
YUSEF TRAMMEL                             :
                                          :
    Defendant-Appellant               :                Case No. 2012 CA 00237


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to appellant.


/s/ John W. Wise_____
HON. JOHN W. WISE


/s/ W. Scott Gwin_____
HON. W. SCOTT GWIN


/s/ Craig R. Baldwin_____
 HON. CRAIG R. BALDWIN